[Civ. No. 66547. Second Dist., Div. One. Nov. 22, 1983.]

E. F. HUTTON & COMPANY, INC., Plaintiff and Appellant, v. CITY NATIONAL BANK, Defendant and Respondent.

COUNSEL

Anderson, McPharlin & Conners, Ronald J. Epman and Wendy Y. Watanabe for Plaintiff and Appellant.

James P. Del Guercio, Arthur G. Spence and Barbara Faye Stein for Defendant and Respondent.

Almon B. McCallum and Loring E. Tocchini as Amici Curiae on behalf of Defendant and Respondent.

OPINION

FAINER, J.*—Plaintiff E. F. Hutton & Company, Inc. (Hutton) appeals from a judgment of dismissal entered after the trial court sustained general demurrers of defendant City National Bank (City Bank) to plaintiff's second amended complaint. ▉ ▉ ▉ ▉ The minute order sustaining the demurrer stated that the court's order was made ". . . per points and author-

---

*Assigned by the Chairperson of the Judicial Council.

ities in moving papers[1] . . . [and the demurrers were sustained] *without leave to amend.*" (Italics added.)

Plaintiff, as a drawer of 18 checks totalling $638,598, sought recovery from defendant City Bank, a collecting bank,[2] for losses it sustained when one of plaintiff's employees obtained the 18 checks made payable to various named individual payees, forged the payees' indorsements, presented the checks with the forged indorsements to the defendant City Bank who collected the amount of the checks from plaintiff's drawee bank or banks and then deposited the check funds in the employee's personal account at defendant City Bank. Plaintiff's theory of recovery against defendant City Bank was for negligence, breach of the warranty obligations imposed by sections 3417 and 4207 of the California Uniform Commercial Code,[3] and a common count.

In *Allied Concord etc. Corp.* v. *Bank of America* (1969) 275 Cal.App.2d 1 [80 Cal.Rptr. 622], it was held that a drawer, such as plaintiff Hutton, had a direct cause of action against a collecting bank, such as defendant City Bank, on the theory that the drawer was a third party beneficiary of the implied presentment warranties of section 4207 owed by the collecting bank to the drawee bank.

This right was reaffirmed by our Supreme Court in *Sun 'N Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], in which the court discussed the theories of recovery available to the drawer, including negligence and breach of warranty. The pleadings of plaintiff Hutton are reviewed with the holding of *Sun 'N Sand*[4] as a guide.

First, as to plaintiff's negligence cause of action, the following is alleged: Plaintiff's employee, one Hamaoui, maintained an account in the

---

[1]Code of Civil Procedure section 472d requires the trial judge to specify the grounds upon which the ruling is based when the demurrer is sustained. This requirement is satisfied if the judge makes specific reference to the appropriate paragraphs of the demurrer or the supporting points and authorities. Here, the trial judge did not satisfy this requirement, but it does not appear that plaintiff's lawyer requested a statement or a recital of specific grounds. Failure to demand or to point out to the court the absence of the specific grounds waives the irregularity. (*Cohen* v. *Superior Court* (1966) 244 Cal.App.2d 650, 655 [53 Cal.Rptr. 378].)

[2]A collecting bank is a bank handling a check for collection. The definition does not include the payor bank, the drawee. California Uniform Commercial Code section 4105, subdivision (d).

[3]All references to code sections will be to the California Uniform Commercial Code unless otherwise indicated.

[4]See also *Joffe* v. *United California Bank* (1983) 141 Cal.App.3d 541 [190 Cal.Rptr. 443]; *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797 [149 Cal.Rptr. 883].

Beverly Hills office of defendant City Bank.[5] Defendant City Bank knew or should have known Hamaoui was "an employee and fiduciary" of plaintiff. Eighteen checks, totalling $638,598, were drawn by plaintiff payable to eighteen different named individual payees. The smallest check sum was $10,000, the largest, $81,598. The amount of each check was properly made payable to each payee. The funds drawn rightfully belonged to each named payee. Over a period of approximately one year, Hamaoui presented these checks to defendant City Bank for collection and for credit to Hamaoui's personal account at defendant City Bank. Each check contained a forged indorsement of the named payee. It was foreseeable to defendant City Bank that plaintiff would be injured by any negligence of defendant City Bank in accepting said checks for collection from plaintiff's drawee bank or banks; therefore, defendant City Bank owed plaintiff a duty to act with care in handling these checks. Defendant City Bank and its employees knew or should have known that each check was irregular and that further inquiry was required. The checks were handled for collection by defendant City Bank for credit to Hamaoui's account without any reasonable attempt to verify the indorsements or Hamaoui's authority to deposit the proceeds in his personal account. Defendant City Bank breached its duty of due care in failing to take reasonable steps to ascertain the genuineness of the check indorsements and was "grossly negligent" in failing to follow reasonable commercial banking standards. Finally, as a proximate cause of this negligence, plaintiff was damaged in the sum of $638,598.

■ Negligence is a tort, a theory for imposing liability on a defendant for injuries incurred by a plaintiff. "Negligence, . . . , is conduct that falls below a standard established by law for the protection of others against unreasonable risk of harm. [Citations.] The standard of conduct applicable to a particular defendant can be expressed in terms of defendant's duty to plaintiff or to people generally." (California Tort Guide (Cont.Ed.Bar 1979) General Principles, § 1.2, p. 2.) Civil Code section 1714, subdivision (a) embodies a fundamental standard of conduct and states that a person is responsible for injury occasioned to another by the person's want of ordinary care or skill in management of his property or person.

■ Actionable negligence has three elements: a legal duty to use due care, breach of that duty, and a proximate or legal causal connection between the breach and plaintiff's injuries. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].)

In *Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 692-696, our Supreme Court held that a drawer could state a cause of action

---

[5]Dates will not be mentioned as the statute of limitation is not an issue.

against a collecting bank for negligence and that a bank cannot rely upon mere possession of an instrument, e.g., a check, by an agent or employee of drawer as a sufficient representation to create apparent authority to negotiate the check in the favor of the employee or agent. The court reasoned that a duty to exercise reasonable care depends upon foreseeability of the risk of loss or injury to the drawer by the conduct of the collecting bank.

In the situation where a collecting bank is presented with one or more checks of a significant amount by a person the bank knows or should know is an employee of the drawer and the employee will receive the check proceeds, then sufficiently suspicious circumstances are present to alert the collecting bank that a fraud may be perpetrated on the drawer-employer. Given these factors, *Sun 'N Sand* says a duty of due care is imposed on the collecting bank.

In *Sun 'N Sand,* the Supreme Court was dealing with a variation of the situation of an employer-drawer suing a collecting bank to recover funds embezzled by a dishonest employee through the manipulation of company checks. In discussing the negligence cause of action by the drawer, the high court said the collecting bank ". . . should have appreciated the indicia of misappropriation . . . [which] is, of course nothing other than a determination that . . . [the drawer-employer's] loss was reasonably foreseeable. . . . We are not persuaded that commerce will be impeded by a duty of inquiry in this context that we should depart from the fundamental principle that actors are liable for reasonably foreseeable issues occasioned by their conduct. . . . We hold simply that the bank cannot ignore the danger signals inherent in such an attempted negotiation. There must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed. In the absence of such indicia the bank pays at its peril." (*Id.,* at pp. 695-696.)

The *Sun 'N Sand* court limited the duty to those situations in which the ". . . checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (*Id.,* at p. 695.) The Supreme Court's narrowing of the scope of a collecting bank's duty of inquiry to checks drawn to the order of a bank was merely an application of the *Sun 'N Sand* facts to the rule that the collecting bank has a general duty and obligation, based on foreseeability of risk to a drawer, to exercise reasonable care. In *Joffe* v. *United California Bank, supra,* 141 Cal.App.3d 541, the check was payable to an "escrow account" of a bank but the indorsed check was presented to the collecting bank by a third party, who was not the designated payee and was not identified as the authorized representative. The *Joffe* court held that there was insufficient objective indicia from which

the collecting bank could reasonably conclude that the person presenting the check was authorized to negotiate it for said person's benefit. (*Id.,* at p. 556.) The *Joffe* decision did not limit the negligence cause of action only to the situation where the check or checks are drawn payable to the order of a bank, and neither do we.

■ In our instant case, the checks, either in the aggregate or individually, were for a substantial amount, payable to individual payees at another bank, with inadequate indicia on the face of the checks (as pleaded) regarding the authorization of Hamaoui (who, it appeared, was to benefit from each transaction) to negotiate the instruments. Under the circumstances, it must be concluded that the risk to the drawer plaintiff was sufficiently foreseeable to impose a duty on defendant City Bank, the collecting bank, not to ignore the danger signals inherent in the forged negotiations by Hamaoui. The defendant bank proceeded at its peril when it failed to take reasonable steps to investigate Hamaoui's authority to negotiate the checks and to deposit the collected check funds in his personal account.

The plaintiff's allegations, in its negligence claim, state facts of duty and of a breach of that duty proximately causing its loss or injury. ■ The plaintiff, therefore, has alleged facts sufficient to state a cause of action for negligence unless, as claimed by defendant City Bank, the provisions of section 3405, subdivision (1)(c) are a necessary element of a negligence cause of action by a drawer against a collecting bank based upon the actions of drawer's dishonest employee in forging indorsements on checks payable to a named individual payee and then negotiating the check to the employee's benefit. Section 3405, subdivision (1)(c) provides that ". . . [a]n indorsement by any person in the name of a named payee is effective if . . . [a]n agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest. . . ." This Uniform Commercial Code provision is often referred to or called the "padded payroll" preclusion.

■ As background for this code section, a drawee bank or a collecting bank, under most circumstances, is liable if it pays on a forged indorsement. "This is because it is bound to pay *only in accordance with the* . . . [drawer's] *order* . . . . [A] forged indorsement is no indorsement at all, and when the bank pays on it, it is paying in violation of the . . . [drawer's] order. [Citations.]" (2 Witkin, Summary of Cal. Law (8th ed. 1973) Negotiable Instruments, § 144, p. 1397.) ■ One of the exceptions to this principle is the "padded payroll" preclusion (§ 3405, subd. (1)(c)), which states that the forged indorsement is deemed effective if an employee of the drawer has supplied the drawer with the name of the payee when the employee intends to dishonestly benefit from the transaction. What this means is that

the employee's fraudulent indorsement permits title to pass as if no forgery had ever occurred; the employer, having drawn the check cannot ordinarily assert the forgery to recover from the collecting bank. The rationale for the rule is a balancing of losses and ". . . the loss should fall upon the employer . . . rather than upon the subsequent holder or drawee . . . . [because] the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the costs of such insurance is properly an expense of his business rather than of the business of the holder or drawee." (See Cal. Code com., West's Ann. Cal. U. Com. Code (1964 ed.) § 3405, pp. 287-288, Deering's Ann. Cal. U. Com. Code (1970 ed.) § 3405, p. 219.) We hold, however, that the collecting bank may bear liability for loss if it has culpably contributed to the forgery's success.

 It is argued that this padded payroll exclusion applies to tort actions including negligence claims. We disagree. Section 1103 states that the principles of law and equity shall supplement the code unless displaced by particular provisions of the Uniform Commercial Code. No provision of the Uniform Commercial Code displaces common law negligence recovery. (See *Joffe* v. *United California Bank, supra,* 141 Cal.App.3d 541, 557-558.) Section 3405, subdivision (1)(c) is "not applicable in . . . [a negligence cause of action]. Moreover, . . . [the section does] not create a loss distributive scheme which would shield depositary . . . [or collecting] banks under fact patterns similar to that alleged in the . . . [plaintiff Hutton's] complaint. (See *Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d at p. 696; *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank, supra,* 85 Cal.App.3d at p. 813.)" (*Joffe* v. *United California Bank, supra,* 141 Cal.App.3d 541.)

Our Supreme Court specifically has held that the padded payroll section did not apply and does not bar the drawer from pursuing its remedies in tort. (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 696.) The court stated that the application of the padded payroll provision "derives from the premise that the employer/drawer is better able to prevent the success of such fraud than the bank . . . ." (*Ibid.*) The court then said that when the balance of the equities between a drawer-employer and a collecting bank do not exist due to circumstances surrounding a transaction, the padded payroll section can not be applied. (*Ibid.*) *When the collecting bank is confronted with obviously suspicious circumstances and could have reasonably foreseen the plaintiff's loss, the padded payroll provisions of the California Uniform Commercial Code cannot be invoked and the defendant became subject to general negligence liability.* (*Ibid.*)

■ The plaintiff has alleged facts sufficient to state a cause of action for negligence. The padded payroll exclusion is not applicable to the elements of plaintiff-drawer's negligence cause of action against defendant City Bank. If not applicable, then it is certainly not a necessary or essential allegation for plaintiff's negligence cause of action. The trial court erred in sustaining defendant's demurrer to plaintiff's "First Cause of Action" for negligence.[6]

■ Second, as to plaintiff's breach of warranty claim against defendant City Bank, the following is alleged: Plaintiff incorporated most of the negligence allegations into the warranty count and alleged that by reason of the forged indorsements, defendant City Bank breached its warranty obligations under sections 3417[7] and 4207.[8] Plaintiff also alleges it was damaged in the sum of $638,598 as the result of defendant's breach of warranties, that defendant City Bank, disregarding reasonable commercial banking practice, acted in bad faith, and was guilty of gross negligence. Finally, plaintiff alleges that defendant is estopped to assert the padded payroll defense of section 3405 because of defendant's gross negligence.

The *Sun 'N Sand* court, in analyzing the statutory scheme for pleading and proving a breach of the implied presentment warranties of section 4207, said that *the good title warranty is concerned only with the validity of indorsement, and if the dishonest employee's behavior comes within section 3405, subdivision (1)(c), there is no breach of warranty claim.* The Supreme Court concluded that the warranty of good title ". . . involves a very limited inquiry: does the instrument presented contain all necessary indorsements, are such indorsements genuine or otherwise effective?" *Sun 'N Sand, Inc.*

---

[6]Nothing in this decision prevents the defendant City Bank from pleading and asserting the affirmative defense to plaintiff's negligence cause of action of comparative negligence first announced in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] and refined by the progeny of *Li*. This defense may include the negligence of plaintiff in permitting a padded payroll situation under appropriate circumstances.

[7]Section 3417 sets forth the principle transferor implied warranties in which the transferor (a person who transfers an instrument and receives consideration) warrants that ". . . (1) he has *good title* to the instrument or is authorized to obtain payment or acceptance on behalf of one who has good title and the transfer is otherwise rightful; (2) all *signatures* are genuine and authorized; (3) the instrument has not been *materially altered*; (4) *no defense* of any party is good against him; and (5) he has *no knowledge* of any *insolvency proceeding* instituted with respect to the maker or acceptor or the drawer of an unaccepted instrument. (U.C.C. 3417(2).)" (Other citations omitted.) (2 Witkin, Summary of Cal. Law (8th ed. 1973) Negotiable Instruments, § 99, p. 1365.) (Italics in the original.)

[8]"A person (or customer or collecting bank) who presents an instrument for payment or acceptance" impliedly warrants the following: (1) that he has good title to the instrument; (2) that he has no knowledge that the signature of the maker or drawer is unauthorized; and (3) that the instrument has not been materially altered. (2 Witkin, Summary of Cal. Law (8th ed. 1973) Negotiable Instruments, § 101, pp. 1366-1367.)

v. *United California Bank, supra,* 21 Cal.3d 671, 687. We conclude that the *Sun 'N Sand* holding requires the drawer, suing the collecting bank for damages for a breach of warranty of title, to allege ultimate facts that the forged indorsements were not genuine or otherwise effective.

As plaintiff Hutton has alleged that the checks were presented to defendant City Bank with forged indorsements, plaintiff-drawer cannot allege facts sufficient to state a cause of action for damages for a breach of an implied presentment warranty for good title against defendant City Bank unless plaintiff alleges ultimate facts that the 18 checks presented to defendant City Bank did not contain all necessary indorsements and that the indorsements were not genuine or otherwise effective. In order to do this, plaintiff must allege facts either negating the padded payroll exclusion or that defendant City Bank culpably contributed to the success of the dishonest employee, Hamaoui. Plaintiff has not done this and its breach of implied warranty for good title cause of action is defective.

The demurrer to plaintiff's breach of warranty count was properly sustained.

Plaintiff contends that the padded payroll preclusion of section 3405, subdivision (1)(c) is an affirmative defense and does not have to be prematurely pleaded in its complaint. Under most circumstances this is true. ■ "The plaintiff, of course, is not required to plead negative facts to anticipate a defense. (*Jaffe* v. *Stone,* 18 Cal.2d 146, 158-159 . . .; *Bradley* v. *Hartford Acc. & Indem. Co.,* 30 Cal.App.3d 818, 825, . . . .)" *De La Vara* v. *Municipal Court* (1979) 98 Cal.App.3d 638, 641 [159 Cal.Rptr. 648]. There are exceptions to this rule. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 313, 314, pp. 1983-1984.) Such an exception exists when our Supreme Court says that it exists. In *Sun 'N Sand,* the Supreme Court, in fixing pleading guidelines for a breach of an implied warranty of good title cause of action by a drawer against a collecting bank based on a forged indorsement by an employee of the drawer, held that the drawer-plaintiff must plead that the checks contained indorsements that were not valid or effective. (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 687.) These pleading requirements, necessary to allege facts sufficient to state a cause of action, are couched in conclusionary terms. The plaintiff must, however, plead ultimate facts (Code Civ. Proc., § 425.10, subd. (a); 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 268-285, pp. 1939-1960) and, in its second count, plaintiff must plead ultimate facts in its breach of warranty cause of action to negate the padded payroll employee preclusion of section 3405, subdivision (1)(c) once plaintiff alleges facts of forged indorsements by one of its employees of plaintiff's checks naming individual payee or an excuse based on defendant's culpability.

If plaintiff cannot plead such facts under the circumstances of this case, plaintiff cannot plead a cause of action for breach of implied warranties of good title. At the present stage of proceeding, applying the applicable substantive law, it is not clear whether plaintiff can cure the breach of warranty pleading defects. (See *Minsky* v. *Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].) This is not a case where plaintiff has been given repeated chances to state a cause of action for a breach of warranty and the amended pleading remains demurrable. This is a situation where an honest dispute existed as to whether our Supreme Court, in *Sun 'N Sand,* had made the effectiveness and validity of the indorsements under section 3405 an element of plaintiff's cause of action for breach of warranty of good title. The proper interpretation of the *Sun 'N Sand* decision is that plaintiff Hutton can either plead facts showing that the padded payroll section is not present in its breach of warranty cause of action or that the preclusions of section 3405, subdivision (1)(c) are not applicable because of the misconduct or culpability of defendant City Bank.

We do not know any of the factual details of the case at bar. If the checks were properly made out to customers of plaintiff Hutton upon proper authorization of an employee, but that employee or some other employee thereafter improperly took the checks and forged the names of the customer-payees, then the padded payroll preclusion is not applicable as the element lacking is the embezzling employee supplying the names of the payees with the intent that they have no interest in the checks. (Anderson, Uniform Commercial Code (Cum. Supp. 1970-1974) Commercial Paper, § 3-405:5.2, p, 866.) It is entirely possible that plaintiff Hutton can allege such facts.

■ The padded payroll section is not an absolute defense. A collecting bank or any other person seeking to use this section must comply with the standards of conduct imposed by the Uniform Commercial Code. These standards are violated if the bank did not act in good faith in handling the transaction (see § 1203), had knowledge of the employee's breach of fiduciary duty (§ 3304, subd. (2); *Sun 'N Sand Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, [this notice section ". . . seems to contemplate that notice derives . . . from affirmative indications that an improper party is attempting to procure payment." *(Id.,* at p. 690.)]) or acted with objective notice of an impropriety in the transaction. (§ 3304; *Sun 'N Sand,* 21 Cal.3d at pp. 689-690.) In addition to these defenses to the padded payroll section, the plaintiff can plead negligence of the collecting bank in handling the transactions under the general legal principles of the duty imposed upon the bank to act with reasonable care and the trier of fact can consider the

balancing of equities in the loss distribution scheme. (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 696.)[9]

Finally, we note that plaintiff has alleged in general conclusionary terms that the defendant City Bank was guilty of bad faith and it disregarded reasonable commercial bank practices in the breach of warranty cause of action. We do not know if plaintiff Hutton, in alleging "bad faith" on the part of City Bank, is claiming that defendant bank failed to act "in good faith" as defined by section 1203, which is defined by section 1201, subdivision (19) to mean ". . . honesty in fact in the conduct or transaction concerned" or if plaintiff is claiming defendant acted in "bad faith" under the broader common law principle of contract law that there is an implied covenant of good faith and fair dealing in every transaction that neither party will do anything which will injure the right of the other.[10] (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 576, p. 493.)

■ The principles of "good faith" in the Uniform Commercial Code and in the common law are basic principles running throughout all commercial transactions including those governed by the Uniform Commercial Code.

Courts of other jurisdictions have acknowledged that the good faith requirement extends to those who assert the padded payroll preclusion.[11]

---

[9]The *Sun 'N Sand* court has directly rejected the application of the padded payroll section on a negligence action by a drawer against a collection bank by balancing equities on a loss distribution formula. (*Ibid.*) The *Sun 'N Sand* ruling also rejected the preclusion or defense on the basis of a breach of duty of the collecting bank to exercise reasonable care when it asserts section 3405, subdivision (1)(c). As we have pointed out, the Uniform Commercial Code supplements its provisions with general legal principles including the duty to act with reasonable care (see discussion of Civ. Code, § 1714, subd. (a), *supra*) as well as other "principles of law and equity" unless such principles are specifically "displaced" by other provisions of the Uniform Commercial Code (§ 1103). Nothing in the padded payroll section "displaces" the obligation of the bank to act with reasonable care. Section 3405, subdivision (1)(c) does not even mention the question of whether a bank has a duty to act reasonably. All the section does is to alter the general pattern of allocating employee forgery losses of the employer based on an inference that this change leads to a more equitable assignment of liability and loss. (*Sun 'N Sand, supra,* 21 Cal.3d 671, 696.) It is not probable or even logical that by this inference of loss and liability shifting, that the legislature in enacting the Uniform Commercial Code intended to insulate banks from the legal consequences of their negligent conduct. (See Comment, *The Effect of Bank Misconduct on the Operation of the Padded Payroll Preclusion of U.C.C.* § 3-405 (1979) 27 UCLA L.Rev. 147, 174.)

[10]Section 1201, subdivision (19) and section 1203 do not specifically displace the common law principle of the presence in every contract, including commercial transactions under the Uniform Commercial Code, of the implied covenant of good faith and fair dealing present in every transaction. (See § 1103.)

[11]See *Prudential Ins. Co.* v. *Marine Nat. Exch. Bk. of Milwaukee* (E.D.Wis. 1974) 371 F.Supp. 1002, 1003 ("To the extent that a cashing bank is subject to the 'good faith' requirement . . . its defense under [§ 3-405(1)(c)] is, of course, not absolute."); *Fair Park Nat. Bank* v. *Southwestern Inv. Co.* (Tex.Civ.App. 1976) [541 S.W.2d 266, 270-271, 92 A.L.R.3d 600] ("The drawer cannot avoid the defense provided in § 3.405 without a showing of bad faith.").

Pleading and proving that lack of good faith under section 1203 will be difficult because plaintiff must show that the defendant City Bank failed to act "honestly" in the transactions. Courts have often expanded this requirement that the defendant bank merely have a subjective awareness of wrongdoing to lack "good faith." A recent New Jersey court, *Kraftsman Container* v. *United Counties Trust* (1979) 169 N.J.Super. 488 [404 A.2d 1288, 1293], in holding that a bank paying checks in bad faith, cannot claim protection of section 3405, said, "Effective indorsements do not relieve the bank from liability if there is proof of a course of dealing so irregular in nature that the bank is shown to have violated its own policies and to have failed to act according to the standard of honesty-in-fact." This concept of "good faith" seems to be consistent with the fact claims of plaintiff Hutton.

 ██ ██ Pleading and proving a breach of City Bank's implied covenant of good faith and fair dealing would seem to be less burdensome to plaintiff because this "bad faith" concept is so much broader than the Uniform Commercial Code "good faith" provision.[12]

Plaintiff Hutton should be given an opportunity to plead its breach of warranty cause of action consistent with the guideline set forth in this opinion.

 The demurrer to the common count cause of action was sustained without leave to amend because the demurrers to the negligence and breach of warranty causes of action were sustained. As the negligence cause of action was sufficient and plaintiff will be given an opportunity to amend its

---

[12]The application of the implied covenant of good faith and fair dealings requires the existence of some contractual relationship or privity between the drawee and the collecting bank. In *Allied Concord etc. Corp.* v. *Bank of America, supra,* 275 Cal.App.2d 1, 3-4, in permitting a drawer to sue, the court held that the drawer was a third party beneficiary of the statutory obligation owed a drawee including the implied warranties of title. Our Supreme Court, in *Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 681-682, held that a drawer of a check whose account is charged, is a payor within the meaning of section 4207, subdivision (1) providing that the Uniform Commercial Code implied warranties of title extend to a payor who in good faith pays or accepts the check, thus giving the drawee the right to maintain a direct action against the collecting bank. In either case, there is sufficient privity between the drawer and the collecting bank to find that the common law doctrine of the implied covenant of good faith and fair dealing exists in the relationship between plaintiff Hutton and defendant City Bank.

Our Supreme Court in *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 804 [157 Cal.Rptr. 407, 598 P.2d 60], said that where a special relationship exists between the parties, a plaintiff may recover for an economic loss caused by the negligent performance of a contract although plaintiff was not in contractual privity with the defendant. The same factors are present in the case at bar, a special relationship exists between plaintiff drawer and defendant collecting bank and there is a clear foreseeable economic loss to plaintiff. While there is no direct contractual privity, we conclude that a bad faith performance by defendant collecting bank triggers the application of the implied covenant of good faith and fair dealings as a defense to the padded payroll preclusion.

breach of warranty cause of action, the trial court erred in sustaining the general demurrer to the common count cause of action. (See *Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678, 681 [209 P.2d 825].)

In summary, construing the allegations of the negligence cause of action liberally in favor of the pleader (*Joffe* v. *United California Bank, supra*, 141 Cal.App.3d 541, 550), plaintiff Hutton has alleged facts sufficient to state a cause of action for negligence and in its common count. The trial court erred in its rulings sustaining the general demurrers as to these causes of action. ▮▮▮ As to the plaintiff's breach of warranty cause of action, the trial court abused its discretion in sustaining the demurrer without leave to amend because there exists a reasonable possibility that the pleading defects can be cured by amendment. (*LaSala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113].)

The judgment is reversed. The matter is remanded to the trial court to proceed in a manner consistent with this opinion.

Spencer, P. J., concurred.

**HANSON (Thaxton), J.**—I respectfully dissent.

By second amended complaint, plaintiff E. F. Hutton & Company, Inc. (Hutton), as drawer, seeks to shift a $638,598 loss from itself to defendant City National Bank (CNB), the collecting bank, a loss occasioned by the dishonest conduct of plaintiff's employee, Michael Hamaoui (Hamaoui). Hamaoui presented eighteen checks during one year's time, drawn by plaintiff Hutton and payable to various individual or jointly named payees (six in number), to CNB for collection, purportedly indorsed by the payees; the proceeds as collected were deposited in Hamaoui's account at CNB's Beverly Hills branch. As it developed, the indorsements were forged.

It is important to specify at the outset with some particularity what the amended complaint tells us, as well as what it does not tell us. It gives the payees' names and alleges "[t]he amounts drawn on the aforementioned accounts had been deposited by or on behalf of the individually identified payees and were funds which rightfully belonged to each said payee." The complaint was filed, however, by Hutton alone, without alleging the assignment of individual claims to it by the payees. The payees are not specifically described as customers of plaintiff, and we are not told exactly how it happened that checks in substantial amounts were drawn by plaintiff and came into the possession of Hamaoui. We are told, by the complaint, that an "unidentified" employee of defendant CNB was the individual to whom Hamaoui presented the checks, at the bank, for collection and deposit. That

is the extent to which defendant CNB is implicated in the thefts of these substantial sums.[1]

It is well settled that when assessing a complaint on demurrer, the allegations of the complaint must be taken as truthful (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]) and that the trial judge may *not* rely on extrinsic evidentiary matters (with the exception of materials judicially noticed) to decide the issue. (See generally, 3 Witkin, Cal. Procedure (2d ed. 1971) p. 2408 et seq.) On the other hand, pleading is not a game whereby the pleader may prolong litigation that will be to no avail. Here the trial judge made the only reasonable inferences which could be made from the pleaded facts, and therefore did not deprive plaintiff improperly of its day in court.

Those reasonable inferences were that the named payees of the checks were customers of Hutton, and that they were selected by Hamaoui for his scheme and their names "provided" to Hutton with the intention that the payees were to have no interest in the checks as drawn; and that there were no irregularities evident on the checks in question. This case turns upon these reasonable inferences as hereinafter discussed.

Plaintiff proceeded on three theories of liability; namely, negligence, breach of warranty and common count. None of these theories stand up under examination.

## THE NEGLIGENCE THEORY

Plaintiff alleged in its first cause of action that CNB, as the collecting bank, owed it a duty to use due care in collecting the checks and depositing them in Hamaoui's account, a duty CNB breached by processing the checks "without making any reasonable attempt to verify the endorsements thereon or defendant Hamaoui's authority to cash or deposit each and every check referenced above." Plaintiff further alleged that CNB breached its duty of due care because "it failed to take reasonable steps available to it to ascertain the genuineness of the endorsements on the said checks . . ." and "failed to follow reasonable commercial banking standards."

The requirements for stating a cause of action for negligence in California are well established, and need only be referred to briefly here. "Actionable negligence involves a legal duty to use due care, a breach of such legal

---

[1]It may well be that discovery would be required to nail down all the details of Hamaoui's scheme. Obviously, however, it was within plaintiff's actual knowledge prior to pleading plaintiff's case, (1) whether the payees were customers and (2) whether their names were "supplied" to plaintiff when the checks were drawn by plaintiff.

duty, and the breach as the proximate or legal cause of the resulting injury." (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].) While Civil Code section 1714, subdivision (a) declares that "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . ." the question of determining the existence of a duty giving rise to liability is one of law and fact, involving social policy decisions as well as assessment of the foreseeability of harm. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36].)

A recent California Supreme Court case declined to define the precise scope of the duty owed by a collecting bank to a drawer relative to forged indorsements. (*Sun 'N Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 693 [148 Cal.Rptr. 329, 582 P.2d 920].) The analysis utilized in *Sun 'N Sand, supra,* however, is of assistance here. In *Sun 'N Sand,* a suit by a drawer against the collecting bank, UCB, the facts were that plaintiff, too, had a faithless employee, who presented small checks *payable to UCB* to the drawer for signature; UCB collected these checks (substantially altered upward) and in some manner was persuaded to deposit the funds so collected in the UCB account of the drawer's embezzling employee. While the decision declined to adopt a general holding on the scope of duty owed by a collecting bank to a drawer in California, it did determine that "a bank presented with checks payable *to itself* by one who proposes to deposit such checks in his personal account ' "is put upon inquiry and if it fail to make it, pays at its peril." ' [Citations.]" (21 Cal.3d at p. 694; italics added.) In other words, the harm was, under these circumstances, foreseeable.

*Sun 'N Sand* did *not* hold that a collecting bank proceeding on forged indorsements always breaches a duty of care owed to the drawer. The negligence perceived in the *Sun 'N Sand* opinion was the defendant bank's collection of paper payable to itself and the deposit of the proceeds of such a collection to the account of the drawer's employee's account without further inquiry.

The rationale of *Sun 'N Sand* is extended a step further in *Joffe* v. *United California Bank* (1983) 141 Cal.App.3d 541 [190 Cal.Rptr. 443], wherein the check was payable to the escrow department of the bank. The implication of these holdings is that such commercial paper is *not* regular on its face, that its designation of the collecting bank (or a part thereof) as payee puts the bank on notice that a crime may be involved.

In the case at bench, the pleader, Hutton, characterizes the checks as irregular not because there was anything unusual about them per se, but

because they turned out to carry forged indorsements.[2] The payees were not the collecting bank or any bank. The payees were individuals who appeared to have indorsed the checks. I am unaware of any California statutory or decisional law which declares, as a general principle, the rule that a drawer has a cause of action for negligence against a collecting bank which accepts as valid indorsements which turn out to be forged. Nor has New York, except where some circumstance *independent* of the forgery should have alerted the collecting bank to the type of "suspicious circumstances" warranting further inquiry. (See, e.g., *Merrill, Lynch, Pierce, etc.* v. *Chemical Bank* (1982) 57 N.Y.2d 439 [456 N.Y.S.2d 742, 442 N.E.2d 1253] and *Underpinning etc.* v. *Chase Manhattan* (1979) 46 N.Y.2d 459 [414 N.Y.S.2d 298, 386 N.E.2d 1319].)

In my view the fact that Hamaoui was known to defendant CNB as an employee of plaintiff in maintaining his personal checking account with CNB is not a sufficiently "suspicious circumstance" of a nature which would trigger a duty on the part of CNB to investigate further the validity of the indorsements or Hamaoui's authority to possess such checks. Nor should the *possibility* that one particular teller received the checks from Hamaoui, on behalf of the defendant, for collection purposes, affect the result either; there were no direct allegations of complicity in Hamaoui's scheme on the part of any CNB employee, except an allegation, made on information and belief, that said unidentified employee "knew or should have known that the nature of each of the said checks was irregular and that further inquiry by defendant Bank was required."

What we have here is a situation where there was nothing on the face of the checks or on the indorsements thereon which would have alerted the collecting bank, CNB, to any unusual or suspicious circumstances. There was no foreseeable harm. *In my view such paper must be assessed as it itself appears to the collecting bank.* The reason for this is that, as amicus curiae, the California Banking Association suggest, *to hold otherwise would create an intolerable burden on collecting banks as a practical matter*; banks process great amounts of indorsed commercial paper in a very short period of time, paper which appears valid on its face. It has long been the rule that they need not inquire further in the absence of "suspicious circumstances" which were not extant here—or were certainly not so pleaded. I would not extend *Sun 'N Sand* beyond the limited holding of the California Supreme Court in that case. That is what the majority opinion, as I read it, is attempting to do.

---

[2]It is assumed that if there had been anything unusual about the checks, those facts would have been pleaded.

## The Breach of Warranty Theory

Plaintiff Hutton, in the second cause of action, alleged that defendant CNB, as the collecting bank, warranted that the indorsements on the checks were genuine and that since they were forged, CNB was liable for breach of warranty of good title. *Sun 'N Sand, supra,* held that a drawer such as plaintiff can maintain a cause of action in California against a collecting bank. (21 Cal.3d at pp. 682-683.)

Plaintiff Hutton relies on two sections of the California Uniform Commercial Code sections 4207 and 3417.

Section 4207, subdivision (1), states in pertinent part that "Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that (a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . . ."

Similarly, section 3417, subdivision (1) provides in pertinent part that "Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that (a) He has good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

On the other hand, California Uniform Commercial Code section 3405, subdivision (1) provides that "An indorsement by any person in the name of a named payee is effective [to pass good title] if (c) An agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

As was explained in *Sun 'N Sand, supra,* 21 Cal.3d at p. 687, footnote 14, "Subdivision (1)(c) of section 3405 obviously assumes that the employee supplying the payee's name will cash the check on a forged indorsement and that the named payee, if a real person, will never be aware of the check's existence. When the named payee is a bank through which the check is channeled, the negotiation of the check by the bank under such circumstances is improper and the loss allocation analysis of the comments to section 3405 is not apt in a negligence action based on the manner of negotiation. *The indorsement is still effective for purposes of the good title warranty, however.*" (Italics added.)

Thus, it appears that section 3405 constitutes an absolute defense to an action for breach of warranty by a drawer against the collecting bank where

a faithless employee of the drawer has occasioned the transactions by use of either fictitious payees or payees in existence who have no knowledge of or connection with the transactions in question. The loss allocation theory referred to in *Sun 'N Sand* simply states that "[T]he loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee." (Cal. U. Com. Code, § 3405, com. 4.)

An employer is not only in a better position to *prevent* forgeries in the first instance, but the employer is also in a better position to *detect* forged instruments as they are paid out of the employer's accounts, by reason of the employer's opportunity to review monthly bank statements showing the withdrawals from those accounts. In the instant case, the facts alleged showed that checks in an aggregate amount exceeding one-half million dollars were paid from plaintiff's employer's accounts over a year's period, before the scheme was uncovered.

I construe section 3405 not only to constitute an absolute defense but to constitute substantive law, requiring the employer (here, plaintiff Hutton) to plead facts, if it can do so, to show the inapplicability of section 3405.

As previously noted, plaintiff Hutton neither identified the payees as customers or alleged the manner in which the checks as drawn ended up in the employee's possession. The trial judge, making the reasonable inferences which he was entitled to make, concluded that the employee did in fact "provide" the names of particular customers as payees, with no intention of their receiving the proceeds of the checks, and thus section 3405 was an absolute defense in favor of defendant collecting bank, CNB. Plaintiff argued below, and does here, that such inferences and conclusions should not have been made, that the rules of review concerning demurrers precluded it.

However, Hutton's entire second amended complaint, when read in conjunction with superseded pleadings and realistically, in a common sense manner, showed that section 3405 was *applicable* to the facts. To hold otherwise would, in my view, stretch the concept of liberality in pleading beyond the breaking point, foster "gamesmanship" and cause the unnecessary expenditure of legal fees to defend and judicial resources to decide.

By analogy, if a pleading on its face shows the running of the applicable statute of limitations, and is thus subject to demurrer, so also should a

pleading be subject to demurrer which reasonably shows on its face the applicability of section 3405.

Plaintiff further contended below, and contends here, that failure on the part of a collecting bank to act "in commercial good faith" bars a collecting bank such as CNB from asserting section 3405 as a defense against a breach of warranty cause of action. Plaintiff points out that California Uniform Commercial Code section 1203 provides that "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement."

Plaintiff pleaded defendant CNB's lack of commercial good faith, but offered no specifics in describing that lack, except that it collected the checks in question here on forged indorsements for a depositor who was an employee of the drawer. As the comment to California Uniform Commercial Code section 1201 set forth in subdivision (19) makes clear, more than suspicious circumstances are required in reaching the issue of commercial good faith. (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797 [149 Cal.Rptr. 883].) Some grossly careless conduct or actual complicity must be alleged. None was here.

## THE COMMON COUNT THEORY

Having concluded that plaintiff Hutton has not pleaded viable causes of action based on negligence and breach of warranty theories, the cause of action based on a common count theory, concededly based on the same series of transactions as was defectively set out in the other specific counts, is equally subject to demurrer. (*Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678, 681 [209 P.2d 825].)

I would affirm the judgment rendered below.

Respondent's petition for a hearing by the Supreme Court was denied February 29, 1984.