**M & K CORPORATION, Appellant (Plaintiff Below),**

v.

**FARMERS STATE BANK and Lake City Bank, Appellee (Defendants Below).**

No. 43A03–8601–CV–17.

Court of Appeals of Indiana, Third District.

July 31, 1986.

Rehearing Denied Sept. 9, 1986.

James C. Brainard, Indianapolis, Jeffrey T. Ferriell, Ohio Northern University College of Law, Ada, Ohio, for appellant.

Richard K. Helm and Jay A. Rigdon, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for Farmers State Bank.

Thomas F. Lewis, Jr., and Mark J. Phillipoff, South Bend, Ind., for Lake City Bank.

STATON, Presiding Judge.

In the period from July 28, 1981 to February 8, 1982, certain employees of M & K Corporation (MK), who were authorized by MK to sign checks, took advantage of their position and fraudulently endorsed forty-five (45) checks. These checks totaled $14,-553.19, and were made out to real and imagined people. They were cashed by the Farmers State Bank and honored by the Lake City Bank, where MK maintained its account. MK seeks to recover the amount charged to its account from both banks (hereinafter "Bank") because the checks bearing forged endorsements were cashed by the Bank without proper identification. The Bank was granted summary judgment and MK appeals.

The sole issue we must address is whether the fictitious payee rule, contained in West's AIC 26–1–3–405, should apply when, without asking for identification, a bank cashes a check over a forged endorsement.

Affirmed.

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C). In reviewing a grant of summary judgment, we will apply the same standard as that applied by the trial court, and we will affirm only if the prevailing party is entitled to judgment as a matter of law. *Integrity Insurance Co. v. Lindsey* (1983), Ind.App., 444 N.E.2d 345, 347, *trans. den.*

In the instant case, MK insists that the Bank's failure to demand identification before cashing the fraudulent checks was negligence and is a genuine issue of fact to be proven at trial. If proven, MK would be entitled to recover the money withdrawn from its account.

The Bank's counterargument is that it is entitled to summary judgment as a matter of law, and it relies on the following statute:

(1) An endorsement by any person in the name of a named payee is effective if

(a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

(2) Nothing in this section shall affect the criminal or civil liability of the person so endorsing.

West's AIC 26–1–3–405.

Both MK and the Bank agree that subsection (1)(b) of the above statute, also known as the fictitious payee rule, is applicable to the facts of the instant case. In an action against a bank, subsection (1)(b) operates as a complete defense and precludes an employer (MK) from trying to prove that it was the bank's negligence that was responsible for the loss. Although MK concedes that there are instances where IC 26–1–3–405 can be properly applied (see IC 26–1–3–405 comment 3 (1980)), the position MK would like us to adopt is that the protection afforded to the bank under the statute is warranted only when the employer is in a better position

than the bank to prevent the loss. The rationale behind this principle is as follows:

> ... the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

IC 26–1–3–405 comment 4 (1980).

Succinctly put, MK advocates a policy change. It would have us disturb the present allocation of risk, which the legislature has placed on the employer, and provide a mechanism to shift the loss to the bank when it acts negligently. MK contends that it should be permitted to go to trial and demonstrate that it was the bank, whose teller failed to ask for identification and paid the checks despite a forged endorsement, rather than MK, who was in the best position to guard against the loss which occurred here.

Although we have found no Indiana cases directly on point, we have been referred to two other jurisdictions which have considered the question of how to allocate risk when there is an allegation that a bank negligently cashes a check over a forged endorsement. Although when construing an Indiana statute for the first time our court is not bound by decisions from foreign jurisdictions, it is appropriate to look to the decisions of other States which interpret statutory language which is identical or of similar import. *Hatfield v. LaCharmant Home Owners Ass'n., Inc.* (1984), Ind.App., 469 N.E.2d 1218, 1221, *trans. den.*

In *E.F. Hutton & Co., Inc. v. City National Bank* (1983), 149 Cal.App.3d 60, 196 Cal.Rptr. 614, *reh. den.* (Hanson, J., dissenting), a dishonest employee cashed eighteen (18) checks totaling $638,598.00. Each check was presented to the dishonest employee's bank and contained a forged payee endorsement. The funds from these checks were then deposited in the dishonest employee's personal account, which was in the same bank.

The plaintiff sued the bank on the theory that it was negligent for failing to ascertain the genuineness of the check endorsements or to verify the dishonest employee's authority to deposit these checks in his personal account. In deciding that the plaintiff stated a cause of action, the California Appellate Court held that the bank may bear liability if it culpably contributed to the forgery's success. *Id.*, 149 Cal. App.3d at 70, 196 Cal.Rptr. at 620.

In reaching this result, the California court noted that its section of the Uniform Commercial Code corresponding to IC 26–1–3–405 (West's Ann.Cal.Comm.Code § 3405), is not an absolute defense if the bank is confronted with obviously suspicious circumstances and could have reasonably foreseen the plaintiff's loss. *Id.* It reasoned that in order to be entitled to the defense, the bank must comply with the standards imposed by the Uniform Commercial Code: good faith in handling the transaction (*see* U.C.C. § 1–203), no knowledge of the employee's breach of a fiduciary duty (*see* U.C.C. § 3–304(2)) and act without objective notice of an impropriety in the transaction (*see* U.C.C. 3–304). Finally, the California court added that the bank must conform to the general legal principles of the duty to act with reasonable care and the trier of fact can consider balancing equities in the loss distribution scheme. *Id.*, 149 Cal.App.3d at 73, 196 Cal.Rptr. at 622. Under California's view then, banks may be liable in spite of the language of U.C.C. § 3–405.

An opposing position was taken by New York in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank* (1982), 57 N.Y.2d 439, 456 N.Y.S.2d 742, 442 N.E.2d 1253 (Cooke, C.J., concurring). In this case, dishonest employees caused thirteen (13) checks totaling $115,180.00 to be drawn. The employees then supplied forged payee endorsements to these checks

and deposited the money in banks located in Ohio and California. The issue here, as in *E.F. Hutton,* dealt with the exculpatory effect of U.C.C. § 3–405.

The New York court held that, despite the fact that the forged endorsements were handwritten, that they did not state "for deposit only," and that they bore second endorsements of unrelated persons or entities, the bank was still entitled to the defense afforded by U.C.C. § 3–405. The New York court's reasoning was grounded in their analysis of the legislative intent behind U.C.C. § 3–405, and their conclusion was that the rule represents a conscious choice to favor bankers over bank customers. *Id.,* 57 N.Y.2d at 445, 456 N.Y.S.2d at 745–46, 442 N.E.2d at 1256–57. The *Merrill Lynch* court also observed that it was no oversight that the legislature did not delineate a standard of care a bank must follow in order to be protected by U.C.C. § 3–405. In other sections of the U.C.C. which deal with bank liability and forged endorsements, the bank must exercise ordinary care, *see* U.C.C. § 4–406(2), and reasonable commercial standards, *see* U.C.C. § 3–406. Unlike those sections, it is the New York court's position that the legislature intended that a bank's mere failure to exercise ordinary care within the embrace of U.C.C. § 3–405 will not subject it to liability. *Id.,* 57 N.Y.2d at 447, 456 N.Y.S.2d 747, 442 N.E.2d at 1258. Yet, even under this view the bank's defenses are not absolute. The New York court also wrote:

> This is not to say that, if a check is "tainted in *some other way* which would put the drawee on notice, and which would make its payment unauthorized" (*Underpinning & Foundation Constructors v. Chase Manhattan Bank, N.A.,* 46 N.Y.2d 459, 466, 414 N.Y.S.2d 298, 386 N.E.2d 1319, *supra;* emphasis supplied), a drawee bank may yet not be liable. For instance, a drawee bank surely is not immunized by section 3–405 when it acts dishonestly. In short, "a basis for liability *independent* of any liability which might be created by payment over a forged instrument alone"

may very well survive (emphasis in original) (citation omitted). *Id.*

The law in Indiana is similar to that of California and New York in that the general rule is that a bank is presumed to know the signatures of its depositors and pays forged checks at its peril unless the bank is entitled to an exception. *Indiana National Corp. v. FACO, Inc.* (1980), Ind. App., 400 N.E.2d 202, 204. One of these exceptions is created by U.C.C. section 3–405 and adopted by states such as Indiana, California and New York.

Since no cases applying that section of the U.C.C. have been found in Indiana, we have looked to other sources which have addressed that rule. Even though the two cases we examined reached different results, a common thread running through them was a criticism of the harshness which can result from broad application of 3–405 in instances where a bank negligently paid over a forged endorsement. *Accord,* Harbus, *The Great Pretender-A Look at the Impostor Provision of the Uniform Commercial Code,* 47 U.Cin.L. Rev. 385, 409; Comment, *The Effect of Bank Misconduct on the Operation of the Padded Payroll Preclusion of U.C.C. § 3-405,* 27 U.C.L.A.L.Rev. 147, 160–61; White & Summers, Uniform Commercial Code [2d ed.], § 16–8, p. 639.

Yet, we are constrained by our canons of statutory construction and judicial restraint not to change by judicial fiat what the legislature has enacted. It is well settled that courts may not interpret a statute which is plain and unambiguous on its face, *Metropolitan Development Com'n of Marion County v. Villages, Inc.* (1984), Ind. App., 464 N.E.2d 367, 369, *cert. den.* (1985), —— U.S. ——, 105 S.Ct. 1879, 85 L.Ed.2d 171, and that effect must be given to plain and manifest meaning of language employed. *Indiana Dept. of Public Welfare v. St. Joseph's Medical Center, Inc.* (1983), Ind.App., 455 N.E.2d 981, 983, *trans. den.*

There is no contention that IC 26–1–3–405 is not clear and straightforward; we are only presented with a claim that the

operation of the statute is not what the legislature intended. In previous cases we have held that when a statute is specific and unambiguous, the court must enforce its plain meaning, *Fletcher v. Town of Highland* (1984), Ind.App., 461 N.E.2d 147, 149, and it is only when the language of the statute is unclear that courts should search for legislative intent. *Indiana Dept. of Public Welfare, supra,* 455 N.E.2d at 983. It is our conclusion that the language of IC 26–1–3–405 is clear. It is appropriate that the legislature define public policy through the statutory process, *U.S. Fidelity & Guaranty Co. v. DeFluiter* (1983), Ind.App., 456 N.E.2d 429, 432, *trans. den.,* and the decision to allocate losses from forged endorsements to the bank rather than its customer properly belongs to the legislative branch of government.

The decision of the trial court awarding summary judgment to the Bank is affirmed.

HOFFMAN and GARRARD, JJ., concur.