[Civ. No. 60748. Second Dist., Div. Three. Mar. 30, 1983.]

SIDNEY JOFFE et al., Plaintiffs and Appellants, v.
UNITED CALIFORNIA BANK et al., Defendants and Respondents.

542

546

Counsel

Mazirow, Forer, Lawrence, Cunningham & Giden, John D. Zemanek, Gantz & Forer and Herbert L. Forer for Plaintiffs and Appellants.

James W. O'Neil, Dennis D. Slattery, Thomas A. Pashalides, George W. Coombe, Jr., Ullar Vitsut, Thomas R. Cory, Jayne T. Kaplan and Naki B. Margolis for Defendants and Respondents.

---

## OPINION

KLEIN, P. J.—(1) ■■■ ■■ ■■ Sidney and Esther Joffe (the Joffes) appeal from an order of dismissal entered after the trial court sustained demurrers without leave to amend to all four causes of action alleged in the Joffes' third amended complaint.[1]

The Joffes sought to recover for damages they sustained when Bank of America National Trust and Savings Association (B of A) accepted for deposit into a B of A account a check for $25,000 drawn to the order of "Continental Finance Systems-Wells Fargo Escrow Trust Account." The Joffes also sought recovery from United California Bank (UCB) as the payor bank.

B of A demurred to the first and third causes of action in which the Joffes' alleged negligence and breach of warranty of good title, on the grounds that no cause of action was stated. (Code Civ. Proc., § 430.10, subd. (e).) UCB demurred on the same grounds to the second and fourth causes of action, which alleged negligence and payment of a check upon improper indorsement.

We reverse, finding that the first, third and fourth causes of action withstand a general demurrer, but affirm the trial court's ruling that the second cause of action states no grounds for relief.

### THE COMPLAINT

■■ ■■■■■■ The allegations in Joffes' complaint reveal[2] that they were the victims of a fraudulent scheme as follows: On July 20, 1978, they entered into

---

[1]This court, by its own motion, has augmented the record on appeal with the original superior court file. (Cal. Rules of Court, rule 12(a).)

The trial court entered the order sustaining the demurrers to the Joffes' third amended complaint without leave to amend on February 15, 1980, and subsequently entered an order of dismissal on May 22, 1980. The Joffes' notice of appeal states that they appeal from the February 15, 1980, order sustaining the demurrers. Although an order sustaining a demurrer without leave to amend is not appealable, we deem the appeal to be from the May 22, 1980, order of dismissal, which is appealable. (*Vibert* v. *Berger* (1966) 64 Cal.2d 65, 70 [48 Cal.Rptr. 886, 410 P.2d 390]; *Radesky* v. *City of Los Angeles* (1974) 37 Cal.App.3d 537, 539 [112 Cal.Rptr. 444].)

[2]On appeal, the reviewing court treats a demurrer as admitting all properly pleaded material facts in the complaint. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

an investment agreement with Continental Financial Systems (Continental) for the purpose of purchasing real property in Calabasas. Under the investment agreement, the Joffes agreed to deposit into Continental's escrow trust account at Wells Fargo Bank $25,000, which amount would later be transferred to a property escrow. Continental instructed them to make their check payable to "Continental Financial Systems-Wells Fargo Escrow Trust Account" to insure proper handling of the funds.

The Joffes, who maintained a savings account with Allstate Savings and Loan Association (Allstate) withdrew $25,000 from their account and had Allstate issue a check for $25,000 payable to the order of:
"Continental Finance Systems-
"Wells Fargo Escrow Trust Account."
The check was drawn upon Allstate's account with the North Hollywood Branch of UCB.

The Joffes delivered the check to Continental, which desposited it into its account with B of A with a stamped indorsement:
"Pay to the order of
"BANK OF AMERICA
"National Trust and Savings Association
"For Deposit Only
"Continental Financial Systems
"02137 - 07857."
B of A presented the check for payment to UCB which accepted it and deducted the face amount from Allstate's account. Allstate subsequently assigned to the Joffes all of its rights, title and interest in any causes of action it might have arising from this incident.

The first cause of action alleges that B of A negligently breached a duty of due care by accepting the check for deposit into Continental's B of A account. The second cause of action similarly alleges that UCB was negligent in accepting and paying the check despite the restrictive language on the face of the check. In the third cause of action, the Joffes contend that B of A breached its warranty of good title under California Uniform Commercial Code section 4207, subdivision (1)(a).[3] Finally, in the fourth cause of action the Joffes allege that UCB paid money upon an improper indorsement in breach of its agreement with Allstate to honor only properly indorsed checks.

---

[3]All subsequent references to the California Uniform Commercial Code will be by section number only.

## DISCUSSION

As a reviewing court, we must analyze the Joffes' complaint and the successful demurrers under several principles. ■ "A judgment based on an order sustaining a general demurrer must be affirmed if any one of the several grounds of demurrer is well taken. [Citations.] On the other hand, any particular count which is well pleaded will not be affected by defects in a separate cause of action, so long as inconsistent or antagonistic facts are not pled. [Citations.] ■ The complaint must be liberally construed and survives a general demurrer insofar as it states, however inartfully, facts disclosing some right to relief." (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 21-22 [157 Cal.Rptr. 706, 598 P.2d 866].)

■ "The test on demurrer is not whether the allegations are likely to be proven but whether the allegations preclude liability, and the allegations must be construed liberally in favor of the pleader." (*Garton* v. *Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376 [165 Cal.Rptr. 449]; see also *Skopp* v. *Weaver* (1976) 16 Cal.3d 432, 438 [128 Cal.Rptr. 19, 546 P.2d 307].)

### WARRANTY OF GOOD TITLE

We shall first examine the third cause of action, as the issues there presented bear upon the other causes of action in the complaint. ■ ■ ■ ■ ■ The Joffes allege that B of A breached its statutory warranty given as a collecting bank[4] under section 4207, subdivision (1)(a) which directs that "[e]ach customer or collecting bank who obtains payment or acceptance of an item . . . warrants to the payor bank[5] or other payor[6] who in good faith pays or accepts the item that [¶] (a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

Our Supreme Court in *Sun 'N Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 382 P.2d 920] examined the concept of "good title" under section 4207 in order to determine the scope of a collecting bank's

---

[4]A " '[c]ollecting bank' means any bank handling the item for collection except the payor bank." (Cal. U. Com. Code, § 4105, subd. (d).) B of A in this transaction was both a "depositary bank," as the first bank to which the check was transferred for collection (Cal. U. Com. Code, § 4105, subd. (a)), and a collecting bank.

[5]A " '[p]ayor bank' means a bank by which an item is payable as drawn or accepted." (Cal. U. Com. Code, § 4105, subd. (b).) In the present dispute UCB was the payor bank because the check was drawn on Allstate's account with UCB.

[6]"[T]he drawer of a check whose account is charged is a payor within the meaning of section 4207 and may maintain an action against a collecting bank based on that section's warranties." (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* at pp. 682-683.) Allstate was the drawer of the check in this case. Allstate, however, assigned its right, title, and interest in the matter over to the Joffes, the real parties in interest who ultimately suffered the loss of the $25,000. The Joffes may therefore rely on the warranty provided under section 4207 subdivison (1)(a).

warranty. The court noted that "[t]he weight of authority among cases and ·commentators supports a specialized construction of the term 'good title' as it is used in this context, limiting its references to the validity of the chain of necessary endorsements." (*Id.*, at p. 684.)

After careful analysis of the statutory scheme presented in the California Uniform Commercial Code (the Code), the court concluded that the warranty of good title contained in section 4207 "involves a very limited inquiry: does the instrument presented contain all *necessary endorsements* and are such endorsements genuine or otherwise deemed effective?" (*Id.*, at p. 687; italics added.)

The Joffes do not allege that Continental's indorsement was forged or in any way not genuine. ■■■ We must therefore determine whether the facts indicate that Continental, as designated payee or in some other capacity, supplied the "necessary indorsement." In order to decide this question, we must first clarify the meaning of the payee line on the instrument.

The check is payable to the order of:
"Continental Financial Systems-
"Wells Fargo Escrow Trust Account."

The B of A and UCB contend that Continental was the payee and that the words "Wells Fargo Escrow Trust Account" are merely language *describing* Continental as the payee. According to this theory, the check was payable to Continental under section 3117, subdivisions (b) or (c) as "[a]n instrument made payable to a named person with the addition of words describing him [¶] (a) As agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder; [¶] (b) *As any other fiduciary for a specified person or purpose* is payable to the payee and may be negotiated, discharged or enforced by him; [¶] (c) *In any other manner* is payable to the payee unconditionally and the additional words are without effect on subsequent parties." (Italics added.)

■■■ (a) *Subdivision (b) not applicable.*

The Uniform Commercial Code (UCC) comments to section 3117 subdivisions (b) and (c)[7] describe the situation to which they apply as follows: "2. Subsection (b) covers such descriptions as 'John Doe, Trustee of Smithers Trust,' 'John Doe, Administrator of the Estate of Richard Roe,' or 'John Doe, Executor under Will of Richard Roe.' In such cases the instrument is payable to

---

[7]California adopted the UCC as the California Uniform Commercial Code, with certain adaptations, in 1963. (Stats. 1963, ch. 819, § 1101, p. 1849; see Cal. U. Com. Code, § 1101.) The UCC comments are therefore important aids in construing the California provisions.

the individual named, and he may negotiate it, enforce it or discharge it, but he remains subject to any liability for breach of his obligation as a fiduciary. Any subsequent holder of the instrument is put on notice of the fiduciary position, and under the section on notice to purchaser (Section 3—304) is not a holder in due course if he takes with notice that John Doe has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit, or otherwise in breach of duty. [¶] 3. Any other words of description, such as 'John Doe, 1121 Main Street,' 'John Doe, Attorney,' or 'Jane Doe, unremarried widow,' are to be treated as mere identification, and not in any respect as a condition of payment. The same is true of any description of the payee as 'Treasurer,' 'President,' 'Agent,' 'Trustee,' 'Executor,' or 'Administrator,' which does not name the principal or beneficiary. In all such cases the person named may negotiate, enforce or discharge the instrument if he is otherwise identified, even though he does not meet the description. Any subsequent party dealing with the instrument may disregard the description and treat the paper as payable unconditionally to the individual, and is fully protected in the absence of independent notice of other facts sufficient to affect his position." (23B West's Ann. Cal. U. Com. Code (1964 ed.) § 3117, p. 86, Deering's Ann. Cal. U. Com. Code (1970 ed.) § 3117, p. 66.)

Subdivision (b) on its face does not apply here because the payee line does not describe Continental's fiduciary capacity, if any. The absence of any terms designating Continental as a fiduciary—terms such as "Trustee," "Administrator," "Executor" or the like—precludes the application of subdivision (b).

■ (b) *Subdivision (c) also inapplicable.*

Similarly, subdivision (c) does not appear to apply because the words "Wells Fargo Escrow Trust Account" do not patently identify or describe *Continental,* but appear rather to identify an escrow or trust at Wells Fargo Bank. To support their arguments regarding the applicability of this subdivision, B of A and UCB cite several cases in which courts have applied section 3117, subdivision (c) to similar payee descriptions. These cases, however, are distinguishable from the case presented here.

In *West Penn Admin., Inc.* v. *Union Nat. Bank of Pitt.* (1975) 233 Pa.Super. 311 [335 A.2d 725], the checks at issue were drawn to the order of:
"Pittsburgh National Bank
"Carpenters Contribution Account."
The checks represented employers' contributions into pension and welfare trust funds on behalf of labor unions. The court determined that Pittsburgh National Bank was the designated payee. In reaching this determination, however, the court relied upon the express agreement establishing the accounts, the bank's

subsequent conduct consistent with that agreement, and testimony by appellant's own expert witnesses that the bank was the payee. The underlying agreement designated the bank as a depositary of the organization, and authorized it to accept checks for deposit and to make payments from funds currently on deposit. (*Id.*, at p. 731.)

In *Pan Am. Bank of Miami* v. *Goldszmidt* (Fla.App. 1978) 364 So.2d 505, the disputed items were two cashiers checks, one payable to "The Shores Corporation of Miami Escrow Acct. for Unit 401 D Bldg. 'C' B/O Pablo Goldszmidt," and one to "The Shores Corporation of Miami Escrow Acct. for Unit 501 D. Bldg. 'C' B/O Pablo Goldszmidt." With little analysis, and citing *West Penn Admin., Inc., supra,* as authority, the court held that the Shores Corporation was the named payee. Although this case bears a superficial similarity to the present dispute, we find it unpersuasive because it relied strongly on the conclusions of the court in *West Penn Admin., Inc., supra,* without examining the specific bases of the court's decision.

Finally, we also distinguish *Frost Nat. Bank* v. *Nicholas and Barrera* (Tex.Civ.App. 1976) 534 S.W.2d 927 as presenting a significantly different payee designation and underlying factual situation from that alleged in the Joffes' complaint.

In *Frost National Bank* the court examined a check drawn to "Depositary Account No. 607." Determining that the words "No. 607" were a description which the depositary bank could ignore, the court discussed the facts that the number "607" was not an account number with any meaning to the bank, and that there actually did exist an account called "Depositary Account." (*Id.*, at pp. 931, 933-935.)

After examining the plain language of section 3117 subdivision (c), the official comments and relevant case law, we conclude that it does not apply to the fact situation before us.[8]

 (c) *Payees are not joint payees.*

We also reject a construction of the payee line which would make "Continental Financial Systems" and "Wells Fargo Escrow Trust Account" joint payees. The presence of the hyphen following the word "Systems" indicates that both

---

[8]The court in *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797 [149 Cal.Rptr. 883]; 815-816, discussed *West Penn Admin., Inc., supra,* and *Frost National Bank, supra,* and similarly distinguished them from the case before it. Presented with a different factual situation, the *Fireman's Fund* court held that the payee line "A/C No. 260 049 569 G. C. Associates" made the instrument payable to the specific account of G. C. Associates, as principal. The instrument fell within the ambit of section 3117 subdivision (a). (*Id.*, at p. 817.)

lines describe a single payee. ▉ A hyphen between two words compounds or connects the words: "to hyphen" means "to connect (as two words or the parts of a word) with a hyphen . . . ." (Webster's Third New Internat. Dict. (1981) p. 1114.)

▉ A more logical reading of the language would make the escrow trust the designated payee. Under this interpretation, the words "Continental Financial Systems" and "Wells Fargo Bank" describe which escrow trust the drawer intended as payee. The Joffes allege in their complaint that "[i]n causing the words 'Wells Fargo Escrow Trust Account' to be placed upon the check, [they] intended to restrict and limit the use of the check to a deposit thereof in an escrow trust account at Wells Fargo Bank and to place all persons dealing with said check on notice of such restricted use." Interpreting the check to be payable to the order of the escrow trust is consistent with a reasonable and common sense understanding of the language and with the Joffes' stated intent.

Section 3110, subdivision (1)(e) permits instruments payable to the order of a trust in stating, "[a]n instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with reasonable certainty, or to him or his order. . . . It may be payable to the order of [¶] . . . . [¶] (e) An estate, trust, or fund, in which case it is payable to the order of the *representative* of each estate, trust or fund or his successors. . . ." (Italics added.)

The UCC comment is useful in understanding this provision. "Paragraph (e) of subsection (1) is intended to change the result of decisions which have held that an instrument payable to the order of the estate of a decedent was payable to bearer, on the ground that the name of the payee did not purport to be that of any person. The intent in such cases is obviously not to make the instrument payable to bearer, but to the order of the representative of the estate. The provision extends the same principle to an instrument payable to the order of 'Tilden Trust,' or 'Community Fund'. *So long as the payee can be identified, it is not necessary that it be a legal entity; and in each case the instrument is treated as payable to the order of the appropriate representative or his successor.*" (23B West's Ann. Cal. U. Com. Code (1964 ed.) § 3110, pp. 63-64, Deering's Ann. Cal. U. Com. Code (1970 ed.) § 3110, p. 43; italics added.)

The Joffes' check was therefore payable to the order of the appropriate representative of the "Continental Financial Systems-Wells Fargo Escrow Trust Account."

(d) *"Appropriate representative" a question of fact.*

The complaint does not allege sufficient facts to determine whether Continental was the appropriate representative under section 3110, subdivision (1)(e).

Ordinarily, an escrow involves delivery of payment to a third party, the escrow holder or depositary, who is at first the agent of both parties and after the performance of specified conditions becomes the agent of each party. (*Schaefer* v. *Manufacturers Bank* (1980) 104 Cal.App.3d 70, 77 [163 Cal.Rptr. 402]; *Lee* v. *Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 162 [70 Cal.Rptr. 378]; see also Civ. Code, § 1057.) The escrow holder would therefore appear to be the appropriate representative of a true escrow. However, the payee here was an "escrow trust," which may have involved different conditions from an ordinary escrow. We also cannot rule out the possibility that this "escrow trust" never in fact existed.

This court cannot and should not determine the identity of the appropriate representative, if any, whose indorsement was necessary to transmit good title to B of A. That is a question of fact for the trial court. We merely determine here that the allegations in the third cause of action clearly do not preclude B of A's liability under the warranty of good title provisions of section 4207, subdivision (1)(a).

(e) *Payment upon improper indorsement.*

The Joffes' fourth cause of action alleges that UCB breached its agreement with its depositor Allstate to honor checks drawn upon Allstate's account only if properly indorsed and presented to UCB.

Under the common law and the Code, a bank has certain obligations to its depositor. Thus, in California it has long been settled law that "[w]hen a bank receives deposits, it has an implied contract with the customer to discharge the indebtedness thus created by honoring such checks as the depositor may draw on the bank, but the bank is not entitled to debit the depositor's accounts upon payments not made by his order or direction." (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank, supra,* 85 Cal.App.3d at p. 805, fn. 7; *Glassell Dev. Co.* v. *Citizens' Nat. Bank* (1923) 191 Cal. 375, 379 [216 P. 1012, 28 A.L.R. 1427].)

The Code reflects this common law doctrine in section 4401, subdivision (1), which permits banks to charge against a depositor's account "any item which is otherwise properly payable from that account." (§ 4401, subd. (1).)

Cases interpreting section 4401, subdivision (1) and the common law upon which it is based have held that checks with a forged or missing indorsement are not "properly payable" and that a bank may not charge a customer's account for such items. (*Security-First Nat. Bk.* v. *Bk. of America* (1943) 22 Cal.2d 154, 157 [137 P.2d 452]; *Pacific Indemnity Co.* v. *Security First Nat.*

*Bank* (1967) 248 Cal.App.2d 75, 87-88 [56 Cal.Rptr. 142]; *Tonelli* v. *Chase Manhattan Bank, N.A.* (1977) 41 N.Y.2d 667, 669-700 [394 N.Y.S.2d 858, 860, 363 N.E.2d 564].) Consequently, "[t]he code provides that as between the drawee bank and the depositor, losses from a forged or unauthorized signature are borne by the bank since payment not made pursuant to directions of a 'properly payable' order cannot be charged to the depositor's account." (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank, supra,* 85 Cal.App.3d at p. 804; fn. omitted.)

UCB contends that Continental's indorsement was effective and that the Joffes must therefore bear the loss. We agree that if Continental were an authorized indorser, UCB will not be liable under this theory. However, we have already determined that Continental was not the payee on the instrument. Whether Continental's indorsement was authorized and effective is therefore a question of fact and not amenable to determination on demurrer. Construing the allegations liberally in favor of the Joffes, as we must, we conclude that the fourth cause of action withstands UCB's demurrer.

NEGLIGENCE

(a) *B of A.*

The Joffes' first cause of action alleges that B of A committed actionable negligence by accepting the check for deposit into Continental's B of A account. On appeal the Joffes rely on *Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671 to support their contention that they have stated sufficient facts to withstand a demurrer.

In *Sun 'N Sand,* an employee obtained authorized company signatures from corporate officers on checks for small amounts payable to UCB. The employee then altered the checks, increasing the amounts to several thousand dollars, and presented them to UCB for payment into her personal account. UCB accepted the checks for deposit into her account even though UCB was the named payee.

The court decided that these circumstances were "sufficiently suspicious that UCB should have been alerted to the risk that Sun 'N Sand's employee was perpetrating a fraud. By making reasonable inquiries, UCB could have discovered the fraudulent scheme and prevented its success." (*Id.,* at pp. 694-695.)

The *Sun 'N Sand* court outlined the factors involved in deciding to impose a duty of due care on UCB indicating that "[t]he most important of these [factors] were set forth in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113, . . . and include . '. . . the foreseeability of harm to the plaintiff, the degree of certainty

that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Id.*, at p. 695.)

The court emphasized, however, that " 'the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the *foreseeability of the risk*. . . .' [Citations.] Our conclusion that UCB should have appreciated the indicia of misappropriation is, of course, nothing other than a *determination that Sun 'N Sand's loss was reasonably foreseeable*. . . . The duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit. Moreover, the bank's obligation is minimal. We hold simply that the bank may not ignore the danger signals inherent in such an attempted negotiation. There must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed. In the absence of such indicia the bank pays at its peril." (*Id.*, at pp. 695-696; italics added.)

We agree with the Joffes that the circumstances alleged in their complaint are sufficiently suspicious to come within a rule similar to that imposed in *Sun 'N Sand*. B of A accepted Continental's indorsement on a $25,000 check payable to an "escrow trust" at Wells Fargo Bank. While Continental's name appeared on the payee line, Continental was not the designated payee and was not identified as the authorized representative of the payee.

Thus, even though Continental may have been the appropriate indorser, the face of the check itself does not provide sufficient "objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed." (*Id.*, at p. 696.) Under these circumstances—a check for a substantial amount, payable to an escrow, or trust, or similar entity at another bank, with inadequate indicia on the face of the check regarding the representative authorized to negotiate the instrument—we conclude that the risk to the drawer is sufficiently foreseeable to impose a duty on a depositary bank "not to ignore the danger signals inherent" in an attempted negotiation by a third party.

(b) *Neither section 1103 nor section 3406 precludes Joffes from stating a cause of action in negligence against B of A.*

 B of A contends that section 1103 precludes the Joffes from proceeding under a negligence theory. Section 1103 states that "the principles of law and equity . . . shall supplement" the Code "unless displaced by the particular provisions" of the code sections. B of A cites sections 3116[9] and 3117 as provisions displacing common law negligence recovery in this situation.

These sections are not applicable in this case. Moreover, they do not create a loss distributive scheme which would shield depositary banks under fact patterns similar to that alleged in the Joffes' complaint. (See *Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d at p. 696; *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank, supra,* 85 Cal.App.3d at p. 813.)

 B of A additionally contends that under section 3406, the Joffes are precluded from asserting B of A's negligence because they were negligent in drawing the check. The section provides that "[a]ny person who by his negligence *substantially contributes* to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." (Cal. U. Com. Code, § 3406; italics added.)

We note initially that neither B of A nor UCB included this objection in their demurrers. Further, the Joffes' actions as alleged in their complaint do not rise as a matter of law to the standard set forth in section 3406. (See Code Civ. Proc., §§ 588, 589.) While the payee line is not a model of clarity, it is not sufficiently ambiguous to preclude the Joffes at this stage from proceeding under a negligence theory.

(c) *UCB.*

 In their second cause of action the Joffes allege that the UCB breached a duty of due care in dealing with the terms and restrictions placed on the checks of its depositor Allstate.

While UCB clearly must abide by the obligations imposed under the common law and the Code, the provisions of section 4401, subdivision (1) preclude recovery under a negligence theory in this situation. Section 4401, subdivision (1) explicitly permits banks to charge a depositor's account for "properly payable" items drawn from that account. Thus, if Continental's signature was

---

[9]Section 3116 provides: "An instrument payable to the order of two or more persons [¶] (a) If in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it; [¶] (b) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

authorized and the check was "properly payable," UCB comes within the protection of the statutes. Similarly, if Continental's signature was not authorized and the check was not "properly payable," the Joffes may recover under the Code. The principles of tort law are therefore displaced by the particular provisions of the Code in this instance, and the demurrer will stand. (Cal. U. Com. Code, § 1103.)

## CONCLUSION

The first count states a cause of action for negligence against B of A.

The second count fails to state facts sufficient to state a cause of action.

The third count states a cause of action against B of A for breach of warranty of good title under section 4207, subdivision (1)(a).

The fourth count states a cause of action against UCB for improper payment of a check.

## DISPOSITION

The judgment (order of dismissal) is reversed as to the first, third and fourth counts, and affirmed as to the second count.

Lui, J., and Danielson, J., concurred.