[No. F006375. Fifth Dist. Apr. 7, 1987.]

TRUMAN F. CAMPBELL, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Appellant.

**COUNSEL**

Andrew J. Capestro for Plaintiff and Appellant.

C. Richard Walters, Wild, Carter, Tipton & Oliver, George W. Coombe, Jr., Winslow Christian, Robert A. Padway and George M. Duff III for Defendant and Appellant.

**OPINION**

**BALLANTYNE, J.—**

### INTRODUCTION

Appellant Bank of America National Trust and Savings Association (B of A or Bank) appeals from a judgment awarding respondent Truman F. Campbell (Campbell) $97,571.45 plus interest and costs based upon the trial court's finding that B of A had breached the indorsement warranties contained in California Uniform Commercial Code sections 3417 and 4207[1] and that it had been negligent in accepting improperly indorsed checks. Campbell cross-appeals from the judgment because the trial court declined to award punitive damages.

---

[1]California Uniform Commercial Code section 3417 provides in pertinent part as follows: "(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that

"(a) He has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

California Uniform Commercial Code section 4207 provides in pertinent part as follows: "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

"(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

FACTS

Campbell is an attorney who has practiced law in the Fresno area for over 33 years and has been a depositor with B of A for approximately 52 years. In late 1974, Campbell began investing in Mid Valley Time Loan (MVTL), a consumer loan company incorporated in 1962 and licensed by the State of California to make small personal loans.

William Probasco was the founder, chief executive officer, manager and majority shareholder of MVTL. Probasco was also the founder, chief executive officer, manager and majority shareholder of Mid Valley Time Loan North (MVTL-North), which was a real estate investment company incorporated in 1974. Campbell was unaware of the existence of MVTL-North.

All of the various parties, Campbell, Probasco, MVTL and MVTL-North, had their accounts with B of A.

In investigating MVTL, Campbell learned that B of A was the financing agency for MVTL and that MVTL was seeking loans from sources other than B of A so that it could avoid paying B of A's high interest rates.

Campbell described the normal procedure which was followed by his office every time he loaned money to MVTL as follows: "[I]f I had extra money that was not doing anything, proceeds of a sale, or that kind of thing, maybe a large fee that came in, distribution, that I had no particular use for at the time, I would call Bill Probasco, or I would ask Helen to call Bill Probasco, or I would ask Bobby to call Bill Probasco and ask him if he could use, ask him if he could use the money. And I don't think—I can't think of any time when he rejected the offer. And so in response to the—to the call—uh—usually he would send somebody over from his office to pick up my check, and either leave a note with Helen or Bobby, or send the note in—I think usually they brought the note in at the time. It was working almost like as if it were a savings account, making deposits and withdrawals by means of notes and checks."

In exchange for his first loan to MVTL Campbell received a promissory note from MVTL. Thereafter, from 1975 to 1982, he received promissory notes from MVTL-North. Campbell never noticed that the notes were from MVTL-North and not MVTL.

Except for the first loan to MVTL, every check that Campbell had drawn payable to MVTL was presented to the bank with a stamped indorsement by MVTL-North for deposit into the account of MVTL-North. Campbell

never noticed that the checks were indorsed by MVTL-North and not MVTL.

For over eight years, as chief executive officer and manager of both entities, Probasco authorized these deposits and he regularly authorized the movement of funds between the two corporations. Probasco described the procedure which was followed by his office when it received a check from Campbell as follows: "I did not personally handle the checks that Mr. Campbell would send to my office. Typically we would get a phone call from one of his secretaries who would say that Mr. Campbell had some money available to loan to us for a period of time, and would we prepare a note in Mid Valley Time Loan-North. And we would take it to Mr. Campbell's office, or his secretary would drop up and we would exchange the note for the check. There may have been a time during this period of time where some of these funds were deposited into Mid Valley Time Loan just through a girl putting it in the wrong account—or reasons of that type. And then the funds would be transferred to Mid Valley Time Loan-North at a later time.

"These were family held corporations and in a sense, and I was the chief executive officer, so we pretty well moved funds between the corporations very quickly and with my authorization."

In June of 1982 Campbell learned that MVTL and MVTL-North were filing bankruptcy and that the outstanding loans might not be repaid. This was the first time that Campbell learned of the existence of MVTL-North. It was at this time that he discovered that the checks which he had drawn payable to MVTL had been indorsed by MVTL-North. He wrote a letter to the Bank demanding reimbursement of the funds paid on the improperly indorsed checks. The Bank refused Campbell's demand and the instant litigation ensued.

## DISCUSSION

The trial court found that even though the indorsements by MVTL-North had been authorized by Bill Probasco as chief executive officer, manager and majority shareholder of MVTL,[2] the Bank had accepted improperly indorsed checks because the checks had not been indorsed by the named payee,

---

[2]With respect to authorization, the trial court found: "Mr. Probasco as Chief Executive Officer, Manager and majority shareholder of *Mid Valley Time Loan,* and as Chief Executive Officer, Manager and sole shareholder of *Mid Valley Time Loan-North,* moved funds between corporations very quickly and with Mr. Probasco's authorization . . . . Mr. Probasco authorized the indorsement of Mr. Campbell's checks (made payable to *Mid Valley Time Loan*) by *Mid Valley Time Loan-North* and deposited to the account of *Mid Valley Time Loan-North* over a period of eight years . . . ."

MVTL. This was the basis for holding the Bank liable for negligence and breach of the indorsement warranties found in California Uniform Commercial Code section 3417 and section 4207.[3] The task of this court is to determine whether there is any theory of law supported by the evidence upon which the conclusion that the Bank accepted checks not properly payable can be sustained. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 403 [303 P.2d 1029]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 261, p. 268.) ■ We conclude that B of A cannot be held liable under any theory supported by the evidence since indorsement of the checks by MVTL-North and deposit into the account of MVTL-North was authorized by the named payee, MVTL.

### WARRANTY OF GOOD TITLE

Section 4207, subdivision (1) (a), provides: "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

"(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

■ The inquiry when applying the warranty of good title of section 4207, subdivision (1) (a), is whether the checks presented to the Bank contained all necessary indorsements and whether such indorsements were genuine or otherwise deemed effective. (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d at p. 687.)

In *Joffe* v. *United California Bank* (1983) 141 Cal.App.3d 541 [190 Cal.Rptr. 443], the court applied the foregoing rule set forth in *Sun 'N Sand* to a very similar set of circumstances. Under an investment agreement with Continental Financial Systems (Continental), the Joffes had agreed to deposit $25,000 into Continental's escrow trust account at Wells Fargo Bank. They made their check payable to "Continental Financial Systems - Wells Fargo Escrow Trust Account." The check was drawn upon an account with United California Bank. The check was deposited by Continental into its account with Bank of America with a stamped indorsement, "For Deposit

---

[3]Although the complaint did not specifically allege in the second cause of action that the Bank had breached the indorsement warranties found in California Uniform Commerical Code section 3417 and section 4207, the court construed it as such without any objection from the parties. However, section 3417 establishes warranties for the transfer of commercial paper not collected through the banking system and is inapplicable to the present case. (*Sun 'N Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 680[148 Cal.Rptr. 329, 582 P.2d 920].)

Only Continental Financial Systems 02137-07857." The Joffes sued Bank of America as the collecting bank for breach of the warranty of good title under section 4207, subdivision (1) (a). The Court of Appeal reversed the lower court's dismissal of the Joffes' action upon demurrer without leave to amend and stated: "This court cannot and should not determine the identity of the appropriate representative, if any, *whose indorsement was necessary to transmit good title to B of A.* That is a question of fact for the trial court. We merely determine here that the allegations in the third cause of action clearly do not preclude B of A's liability under the warranty of good title provisions of section 4207, subdivision (1) (a)." (*Id.* at p. 554, italics added.)

We conclude from the foregoing that a prima facie case of breach of the title warranty of section 4207, subdivision (1) (a), is proven when the indorsement on a check is missing or not identical to the named payee. However, the plain language of section 4207, subdivision (1) (a), and the foregoing language from *Joffe* instruct that the ultimate question under section 4207, subdivision (1) (a), is whether good title to the checks was transmitted to the Bank *or* whether the Bank was authorized to obtain payment on the checks by one who has good title. Thus, once the plaintiff has proven a missing or nonidentical indorsement, the burden of proof shifts to the Bank to prove that it obtained good title or was authorized to obtain payment by one who has good title.

Transfer of an instrument vests in the transferee the same rights as previously possessed by the transferror. (Cal. U. Com. Code, § 3201, subd. (1).) Despite the absence of indorsement[4] by the named payee, if the holder of a check has title thereto and transfers the check to a bank with orders to deposit the funds into a specified account or to pay cash, the bank does not breach the title warranty of section 4207, subdivision (1) (a), in acting upon the instructions of the holder of the check. (Cf. *Mustin* v. *Citizens & Southern National Bank* (1983) 168 Ga.App. 549 [309 S.E.2d 822]; see *Chilson* v. *Capital Bank of Miami* (1985) 237 Kan. 442 [701 P.2d 903, 907].) There is no question but that MVTL, as payee, had title to the checks with the right to transfer title or to instruct the Bank as to how the checks were to be deposited. Whether one looks at the present case in terms of the Bank (as collecting bank) obtaining title or obtaining payment upon authorization from one who has good title, when Probasco had the checks transmitted to B of A with directions to deposit the funds into the account of MVTL-North,[5] the Bank had the right to charge Campbell's

---

[4]Indorsement is defined in Black's Law Dictionary (5th ed. 1979) at page 696, column 2, as follows: "The act of a payee, drawee, accommodation indorser, or holder of a bill, note, check, or other negotiable instrument, in writing his name upon the back of the same, with or without further or qualifying words, whereby the property in the same is assigned and transferred to another."

[5]Since Probasco was chief executive officer and general manager of Mid Valley Time Loan with the power to conduct its business, he had the power to make any contract or take any

account for the face value of the checks. ■ The Bank successfully rebutted Campbell's prima facie showing of breach of the title warranty of section 4207, subdivision (1) (a).

IMPLIED CONTRACT

Campbell contends that in accepting the checks, debiting Campbell's account and depositing the funds into the MVTL-North account, the Bank violated his orders as drawer of the checks. According to Campbell, he intended to lend money to MVTL and not MVTL-North, and his checks were drawn with this limited purpose in mind. Therefore, the checks were not "properly payable" when indorsed by MVTL-North.

In *Joffe,* the court addressed the concept of a check being "properly payable" in terms of an implied contract between the bank and its depositor. "Under the common law and the Code, a bank has certain obligations to its depositor. Thus, in California it has long been settled law that '[w]hen a bank receives deposits, it has an implied contract with the customer to discharge the indebtedness thus created by honoring such checks as the depositor may draw on the bank, but the bank is not entitled to debit the depositor's accounts upon payments not made by his order or direction.' [Citations.]

"The Code reflects this common law doctrine in section 4401, subdivision (1), which permits banks to charge against a depositor's account 'any item which is otherwise properly payable from that account.' (§ 4401, subd. (1).)

"Cases interpreting section 4401, subdivision (1) and the common law upon which it is based have held that checks with a forged or missing indorsement are not 'properly payable' and that a bank may not charge a customer's account for such items. [Citations.] Consequently, '[t]he code provides that as between the drawee bank and the depositor, losses from a forged or unauthorized signature are borne by the bank since payment not made pursuant to directions of a "properly payable" order cannot be charged to the depositor's account.' [Citation.]

"UCB contends that Continental's indorsement was effective and that the Joffes must therefore bear the loss. *We agree that if Continental were an authorized indorser, UCB will not be liable under this theory.* However, we

---

other appropriate action in the ordinary course of business without a formal resolution of the corporation. (*Memorial Hospital Association* v. *Pac. Grape etc. Co.* (1955) 45 Cal.2d 634, 637 [290 P.2d 481, 50 A.L.R.2d 442]; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 95, p. 4392.)

have already determined that Continental was not the payee on the instrument. Whether Continental's indorsement was authorized and effective is therefore a question of fact and not amenable to determination on demurrer." (141 Cal.App.3d at pp. 554-555, italics added.)

Campbell would limit our inquiry to whether the Bank paid according to his authorization, i.e., to no one but MVTL. However, such a limited construction of the law would render meaningless the entire concept of title as examined in the context of our discussion of section 4207, subdivision (1) (a). The logical resolution of the issue is to structure the interplay between the concepts of title and implied contract in terms of burdens of proof as we have done with the title warranty of section 4207, subdivision (1) (a). Thus, once the plaintiff has proven that the Bank (as payor bank) paid funds to someone other than the named payee, the Bank carries the burden of proving that indorsement by a third party and the payment of the funds to a third party was authorized by the named payee. (Cf. *Fireman's Fund Ins. Co.* v. *Security Pacific National Bank* (1978) 85 Cal.App.3d 797 [149 Cal.Rptr. 883]; see *Matco Tools Corp.* v. *Pontiac State Bank* (E.D.Mich. 1985) 614 F.Supp. 1059.) Since the trial court found that indorsement by MVTL-North was authorized by MVTL, the Bank carried its burden of proving that the checks were properly payable and that the payment of funds to the account of MVTL-North was not in breach of the implied contract by B of A.

## NEGLIGENCE

■ "Actionable negligence has three elements: a legal duty to use due care, breach of that duty, and a proximate or legal causal connection between the breach and plaintiff's injuries." (*E. F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d 60, 66 [196 Cal.Rptr. 614].) Campbell established a prima facie case of breach of duty by proving that B of A (as payor bank) paid funds to someone other than the named payee, MVTL, without an intervening indorsement by MVTL. Thereafter, it became the Bank's burden to prove its actions were authorized by MVTL. Since the trial court found that payment of the funds to MVTL-North had been authorized by Probasco as chief executive officer and manager of MVTL, the Bank carried its burden and rebutted Campbell's showing of negligence.

## CONCLUSION

As the named payee on the checks drawn by Campbell, MVTL authorized deposit of the funds into the account of MVTL-North. Thus, despite the absence of indorsements by MVTL, the checks were properly payable and B of A had the right to charge Campbell's account for the amount of the

checks. The Bank did not breach the title warranty of section 4207, subdivision (1) (a), the implied contract with its depositor, Campbell, nor did its actions amount to negligence.

In light of our holding, we need not address Campbell's contentions regarding punitive damages.

The judgment is reversed. B of A is awarded costs on appeal.

Best, Acting P. J., and Harris, J.,* concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied June 24, 1987. Lucas, C. J., and Panelli, J., did not participate therein.

---

*Assigned by the Acting Chairperson of the Judicial Council.