In re: BARTONI–CORSI PRODUCE,
INC. Debtor.

Richard J. SPEAR, Trustee,
Plaintiff–Appellee,

v.

WELLS FARGO BANK, N.A.,
Defendant–Appellant.

No. 96–17038.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1997.

Decided Dec. 1, 1997.

■■■■

■■■■

Edward F. Donohue, Paul E. Vallone, Long & Levit, Thomas O. Jacob, Office of the Chief Counsel, Wells Fargo Bank, N.A., San Francisco, CA, for Defendant–Appellant.

Dennis D. Davis, Goldberg, Stinnett, Meyers and Davis, San Francisco, CA, for Plaintiff–Appellee.

■■■■

Before: CHOY, ALARCON, and T.G. NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Wells Fargo Bank, N.A. ("Wells Fargo") appeals from the district court's decision affirming the judgment of the bankruptcy court in favor of Richard Spear, trustee for the bankruptcy estate of Bartoni–Corsi Produce, Inc. ("Bartoni–Corsi"). The Trustee contends that Wells Fargo is guilty of conversion because it accepted, beginning in August 1992, $228,385.93 worth of checks for deposit that were payable to Bartoni–Corsi, without Bartoni–Corsi's endorsement. We reverse because we conclude that (1) Bartoni–Corsi had no property interest in those checks deposited after October 8, 1992, and (2) Bartoni–Corsi authorized its agents to deposit the checks.

I.

Bartoni–Corsi was a family-owned and operated corporation, organized under California law in 1978, and involved in the wholesale produce business. Richard Bartoni, Jr. was the corporation's president, its sole shareholder, and its sole acting director. Bartoni Jr.'s two daughters, Delilah Mejia and Nancy Yates, were in charge of the corporation's financial affairs.

By 1991, Bartoni–Corsi was having difficulty paying its bills. After failing to develop a viable workout plan between Bartoni–Corsi and its creditors, Mejia and Yates contacted Don Alexander, a financial consultant who, they were told, was experienced in helping ailing companies. In June of 1992, Alexander set up a series of trusts into which Bartoni–Corsi assets would be transferred. Allegedly, the "plan" was to shield the assets from Bartoni–Corsi's creditors and to create a new corporation, Your Produce Company, to take over Bartoni–Corsi's business in early 1993.

Meanwhile, in August 1992, one of Bartoni–Corsi's creditors, CalNet, obtained a writ of attachment on Bartoni–Corsi's checking account at Bank of America. This event triggered the transactions which form the basis of the Trustee's action against Wells Fargo. Following the attachment, Mejia and Yates, with the assistance of Alexander, opened a commercial checking account in the name of Rubicon dba Your Produce Company (the "Your Produce" account) at Wells Fargo. Mejia and Yates were the only authorized signatories on the Your Produce account, and they listed themselves as president and vice-president, respectively, of Your Produce Company. On October 8, 1992, Bartoni–Corsi ceased all operations, sold all of its remaining assets, including accounts receivable, to Your Produce Company, and reopened the following day as Your Produce Company. Both corporations adopted formal resolutions effectuating this change.

Between August 26, 1992 and April 16, 1993, Mejia and Yates deposited checks with a total face amount of $228,385.93 payable to Bartoni–Corsi into the Your Produce account at Wells Fargo. The first three checks deposited into the Your Produce account bore the endorsement of both Bartoni–Corsi and Your Produce Company.[1] The next thirty checks bore the endorsement of Nancy Yates and Your Produce Company, but not the endorsement of Bartoni–Corsi. The remainder of the checks deposited into the Your Produce account bore only the endorsement of Your Produce Company.

---

1. The Trustee did not pursue a conversion claim as to the first three, properly endorsed checks.

■■■■

Bartoni–Corsi filed for bankruptcy on February 19, 1993. Richard Spear, the Trustee for the bankruptcy estate of Bartoni–Corsi Produce, Inc., instituted this non-core adversary proceeding against Wells Fargo Bank, N.A. Both parties consented to the bankruptcy court's rendering of a final judgment, pursuant to 28 U.S.C. § 157(c)(2). The bankruptcy court found that because Wells Fargo accepted for deposit checks payable to Bartoni–Corsi which did not bear a Bartoni–Corsi endorsement, Wells Fargo was liable, as a matter of law, for statutory conversion pursuant to California Commercial Code ("Com.Code") § 3420 (former Com.Code § 3419).[2] Because the bankruptcy court based conversion liability solely on the missing endorsements, it never reached the issue of authority.[3]

The bankruptcy court had jurisdiction to consider the Trustee's state law conversion claims pursuant to 28 U.S.C. § 157(c). This court has jurisdiction pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. We independently review the bankruptcy court's decision without deference to the district court's decision. *In re Sternberg*, 85 F.3d 1400, 1404 (9th Cir.1996).

## II.

We look to California law to resolve the Trustee's state law conversion claims. 28 U.S.C. § 1652. At its core, under California law, conversion liability is founded upon the wrongful exercise of dominion and control over another's property. 5 B.E. Witkin, *Summary of California Law* § 610 (9th ed.1988). Com.Code §§ 3419 and 3420 focus on a particular means by which a bank exercises dominion and control over a check. However, the commercial code's conversion provisions do not preempt the general principle of common law conversion that a party can only maintain a conversion action for property that it owns at the time of the alleged conversion. *See, e.g., Moore v. Regents of Cal.*, 793 P.2d 479, 488 (Cal.1990).[4]

After October 8, 1992, Bartoni–Corsi did not own the checks which the Trustee alleges were converted by Wells Fargo. Because Bartoni–Corsi did not own the checks, it cannot maintain a conversion action with respect to them. California corporations law supports this conclusion. A corporation acts through its board of directors.[5] Cal. Corp. Code § 1001 empowers a corporation to authorize the transfer or sale of substantially all of its assets.[6] To authorize an asset

2. Com.Code § 3419 was replaced by current Com.Code § 3420 effective January 1, 1993. Because the deposits into the Your Produce account occurred in 1992 and 1993, the bankruptcy court applied § 3419 to the 1992 deposits (which totaled $225,424.51) and § 3420 to the 1993 deposits (which totaled $2961.42). Former Com. Code § 3419 states in pertinent part:

"An instrument is converted when ... [i]t is paid on a forged endorsement."

Current Com.Code § 3420 states in pertinent part:

(a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

3. The bankruptcy court did state in a footnote that "even if this case centered on the authority for the endorsements on the checks in question," Wells Fargo would still be liable because Mejia and Yates did not have authority to "embezzle Bartoni–Corsi's money." This conclusion is based on the mistaken perception that the relevant conduct to analyze for authority is the em-

bezzlement of Bartoni–Corsi funds. As we conclude below, the relevant conduct to analyze for authority is not the alleged embezzlement, but rather the endorsement and deposit of the checks.

4. Common law conversion principles are not displaced by the statutory conversion provisions of the U.C.C. "The law applicable to conversion of personal property applies to instruments." Cal. Com.Code § 3420.

5. Cal. Corp.Code § 300 states in pertinent part:

(a) Subject to the provisions of this division and any limitations in the articles relating to action required to be approved by the shareholders ... or by the outstanding shares ... or by a less than majority vote of a class or series of preferred shares ... the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board.

Cal. Corp.Code § 300 (Deering 1986).

6. Cal. Corp.Code § 1001 states in pertinent part:

(a) A corporation may sell ... or otherwise dispose of all or substantially all of its assets when the principal terms are

transfer under § 1001, the board must approve the transaction. The determination that the terms of the asset transfer are fair and reasonable to the corporation is left in the board's discretion.

The Bartoni–Corsi board approved the sale of the corporation's remaining assets to Your Produce Company on October 8, 1992. Thus, under California corporations law, Bartoni–Corsi authorized and completed a transfer of all of its remaining assets, including its accounts receivable, to Your Produce Company. After October 8, 1992, all checks payable to Bartoni–Corsi were the property of Your Produce Company. Wells Fargo could not have converted these checks by depositing them into the Your Produce account, because they were the property of Your Produce Company.

### III.

As to the checks deposited prior to October 8, 1992, conversion liability under Com.Code §§ 3419 and 3420 turns on the question of whether the deposits were authorized by Bartoni–Corsi. The bankruptcy court erred in concluding that conversion liability arises without regard to whether the person who deposited the check had the authority to do so when the payee has not endorsed the check. The precise question presented in this matter has not been resolved by a California court in a published opinion.

When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.

*Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) (citations and quotations omitted).

Although there is no California case law directly on point, the court in *Campbell v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 190 Cal.App.3d 1420, 235 Cal.Rptr. 906 (1987), dealt with a U.C.C. breach of warranty of good title claim based on a missing endorsement theory. The *Campbell* court found that the endorsement and deposit of the checks by the depositor was authorized by the payee. *Id.* at 909. As the *Campbell* court explained, a missing endorsement is sufficient to support a prima facie case for breach of the warranty of good title under the U.C.C. However, "the ultimate question" is one of authority, to be proven by the defendant bank. *Id.* at 910.

In a well-reasoned opinion, the district court in Maryland considered the specific question before this court—whether authority is relevant to conversion liability under U.C.C. §§ 3419 and 3420 in missing endorsement situations. *See Stratton v. Equitable Bank, N.A.,* 104 B.R. 713 (D.Md. 1989), *aff'd,* 912 F.2d 464 (4th Cir.1990). In *Stratton,* as in the instant case, the deposited checks bore the endorsement of the depositor, but not the endorsement of the payee. *Id.* at 723. As the *Stratton* court explained, a bank is entitled under Maryland law to show that a payee's agent had authority to deposit the checks on behalf of the payee without the payee's endorsement.[7] *Id.* at 724. The holdings in *Stratton* and *Campbell* both suggest that a depositary bank's liability under former Com.Code

---

(1) Approved by the board, and

(2) ... approved by the outstanding shares ... either before or after approval by the board and before or after the transaction.

....

(c) Such sale ... may be made upon such terms and conditions and for such consideration as the board may deem in the best interests of the corporation.

Cal. Corp.Code § 1001 (Deering Supp.1997).

7. Because the U.C.C. was meant to make law uniform among the various jurisdictions, the California courts will generally "afford great deference to the decisions of [their] sister jurisdictions interpreting its [the U.C.C.'s] provisions." *Oswald Mach. & Equip. v. Yip,* 10 Cal.App.4th 1238, 13 Cal.Rptr.2d 193, 198 (1992).

§ 3419 and current Com.Code § 3420 turns on the question of authority.[8]

## IV.

 For purposes of determining depositary bank conversion liability under Cal. Com.Code §§ 3419 and 3420, we look only to the existence and scope of an agent's authority at the time of the deposit—not to whether that authority is invalidated by the subsequent misconduct of the agent. The Trustee's characterization of the conduct on which this court should focus its authority inquiry as "theft" or "embezzlement" assumes that which it seeks to prove—that Mejia's and Yates' endorsement of checks payable to Bartoni–Corsi and the deposit of those checks into the Your Produce account was not authorized by Bartoni–Corsi. The question of whether Mejia, Yates, and Bartoni Jr. breached their fiduciary duties to Bartoni–Corsi and its creditors is not before us. Rather, we must determine whether, as a matter of law, Mejia and Yates were acting within the scope of authority granted to them by Bartoni–Corsi. We conclude that they were.

Actual authority can be either express or implied. Cal. Civ.Code § 2316 states: "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Here, Bartoni Jr. consented to his daughters' plan to deposit checks payable to Bartoni–Corsi into the Your Produce account. Bartoni Jr., Mejia, Yates, and Alexander all testified that they were present at a meeting where the plan to deposit checks payable to Bartoni–Corsi into the Your Produce account was discussed and agreed upon. As director, sole-shareholder,

and president of Bartoni–Corsi, Bartoni Jr. was entitled to act in the name of the corporation.[9] Bartoni Jr.'s presence at the meeting and his consent to the plan was legally sufficient to support an inference that Mejia and Yates had implied actual authority to deposit the checks into the Your Produce account. See Cal. Civ.Code § 2316.

 The Trustee contends that a corporation is not bound by those acts of its agents which are detrimental to the corporation. The cases relied upon by the Trustee in support of this contention focus on the question of fiduciary liability. See, e.g., FDIC v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir.1995) (on remand from Supreme Court and republishing relevant language from FDIC v. O'Melveny & Myers, 969 F.2d 744, 750); Meyer v. Glenmoor Homes, Inc., 246 Cal.App.2d 242, 54 Cal.Rptr. 786 (1966). Wells Fargo was not a fiduciary of Bartoni–Corsi. In the context of determining whether a third party non-fiduciary is liable to a corporation, we find inapposite those decisions barring a corporate fiduciary from claiming that the corporation authorized conduct which constitutes a breach of fiduciary duty. See id.

 Cal. Civ.Code § 2306 provides: "An agent can never have authority, either actual or ostensible, to do an act which is, **and is known or suspected by the person with whom he deals,** to be a fraud upon the principal." Cal. Civ.Code § 2306 (emphasis added). Here, the Trustee does not allege that Wells Fargo knew or suspected that Mejia and Yates were embezzling Bartoni–Corsi's funds. Wells Fargo's failure to act in accordance with both reasonable commercial standards, and with its internal operations policies, in accepting for deposit checks with-

---

8. The parties disagree over who has the burden to prove or disprove the existence of corporate authority. This dispute is resolved by the *Campbell* analysis, discussed above. *Campbell*, 235 Cal.Rptr. at 911. As the *Campbell* court explains: "[O]nce the plaintiff has proven that the Bank ... paid funds to someone other than the named payee, the Bank carries the burden of proving that indorsement by a third party and the payment of the funds to a third party was authorized by the named payee." *Id.* Wells Fargo's assertion that the burden should be on the party asserting the conversion claim does not

take account of the fact that where the plaintiff shows that the necessary endorsement is missing, the burden to prove authority shifts to the defendant. *Id.*

9. While this court acknowledges that Bartoni–Corsi was the actual principal, we also recognize that a fictional entity such as a corporation can only act through its duly elected directors. Thus, in determining whether Bartoni–Corsi authorized the deposits, we look to the actions of the corporation's director, Bartoni Jr.

out the endorsement of the named payee does not demonstrate that Wells Fargo knew or suspected that Mejia and Yates were committing fraud on Bartoni–Corsi. To hold otherwise would place an unreasonably high burden of inquiry on the banking industry. "Scrutiny into the financial and business affairs of prospective customers for the express purpose of ferreting out the faithless fiduciary and divining illegal conduits for embezzled funds would be intrusive on the citizenry and add to the cost of financial transactions, both in terms of time and money." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 56 Cal.Rptr.2d 756, 763 (1996).

Thus, we hold that under California law, a corporation, in dealing with a third party, can be found to have authorized conduct by its agents which is detrimental to the corporation. Accordingly, we decide that the deposits into the Your Produce account were authorized by Bartoni–Corsi. Wells Fargo is not liable for statutory conversion.

We REVERSE and REMAND with instructions to enter judgment in favor of Wells Fargo.

Each party shall bear its own costs.