**Jasmine WILLIAMS, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, PNC Bank, Northeast PA, and PNC Bank Corp., Defendants.**

No. 1:04CV00428.

United States District Court, M.D. North Carolina.

Feb. 17, 2005.

Robert Thomas Perry, Perry Perry & Perry, P.A., Durham, NC, for Plaintiff.

Anne Duncan Edwards, Stephen A. Dunn, Emanuel and Dunn, Raleigh, NC, Daniel Alan M. Ruley, Bell Davis & Pitt, P.A., Winston–Salem, NC, for Defendants.

Latshia Sneed, Durham, NC, pro se.

### ORDER

BULLOCK, District Judge.

On January 6, 2005, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. No objections were filed within the time limits prescribed by Section 636.

Therefore, the Court need not make a *de novo* review and the Magistrate Judge's Recommendation is hereby adopted.

**IT IS THEREFORE ORDERED** that the PNC defendants' motion to dismiss (docket no. 6) is denied as to plaintiff's claims for breach of contract, negligence, and a violation of N.C. Gen.Stat. § 25–4–401, and granted as to plaintiff's claims for punitive damages, unfair and deceptive trade practices, and a violation of N.C. Gen.Stat. § 25–3–404.

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

This case comes before the Court on a motion to dismiss brought by defendants PNC Bank, Northeast PA and PNC Bank Corp. (collectively "PNC defendants"). After that motion was filed and briefed, plaintiff sought to file an amended complaint, which the PNC defendants opposed on the ground that it was futile. The PNC defendants claimed that the amended complaint did not state a claim for the same reasons already set out in their motion to dismiss. The Court allowed the amended complaint because the amended complaint dropped some claims and did clarify matters somewhat. Also, given the fact that the PNC defendants claimed that the motion to dismiss already covered those matters, the Court may rely on the amended complaint in deciding this motion. The Court will now decide the PNC defendants' motion to dismiss, but will consider it as it applies to the amended complaint.

### Facts

The facts, as alleged in the amended complaint and as they pertain to the PNC defendants, are as follows. Plaintiff was the beneficiary of her mother's life insurance policy with defendant Metropolitan Life Insurance Company (hereinafter "MetLife"). On January 25, 2002, following her mother's death, plaintiff sent to MetLife a completed set of the necessary claims forms. Her claim was approved and MetLife established a "Total Control Account" for plaintiff. This account was established by MetLife with the PNC defendants, but plaintiff received a personalized checkbook for the account and successfully wrote at least one check on the account.

At some point thereafter, a woman named Latshia Sneed allegedly gained access to plaintiff's checkbooks and financial information. She then contacted the PNC defendants using plaintiff's name, had plaintiff's address changed to her own, and requested that a new checkbook be sent to

her address.[1] Sneed later proceeded to write and forge plaintiff's signature on twelve checks, payable to herself, totaling $48,900. She then deposited the checks into her own account.[2]

Once she found out about the loss of the $48,900, plaintiff informed MetLife and the PNC defendants of the loss and attempted to recover the money. She claims that MetLife investigated and that, despite assurances by MetLife that the money in the account was "guaranteed" against fraud, it refused to reimburse the money. The PNC defendants also refused to repay the account for the forged checks. Defendants base their refusals on plaintiff's alleged negligence in failing to properly monitor her account and detect Sneed's fraud before it reached the level that it did.

Based on these facts, plaintiff filed suit against defendants in state court alleging three state law claims against each of the three defendants. After defendants removed the case to this Court and the PNC defendants filed the motion to dismiss, plaintiff amended her complaint. The first three claims are all against MetLife and are not a part of this motion. The next three are against defendant PNC Bank, Northeast PA. Claim Four of the complaint alleges that PNC Bank, Northeast PA was negligent, breached its contractual duties to plaintiff, and breached certain North Carolina statutes when it processed Sneed's forged checks and failed to promptly remedy the situation. Claim Five alleges bad faith on the part of PNC

Bank, Northeast PA for blaming plaintiff for her loss of funds rather than settling with her according to her wishes. It appears to be a claim for punitive damages. Claim Six of the complaint alleges that PNC Bank, Northeast PA deceived plaintiff into thinking that the money in the Total Control Account was secured and guaranteed. She claims that this is an unfair and deceptive trade practice. Claims Seven, Eight, and Nine mirror the three previous claims except that they are alleged against defendant PNC Bank Corp.

### Legal Standards

This case is before the Court on the PNC defendants' motion to dismiss all of plaintiff's claims against PNC pursuant to Fed.R.Civ.P. 12(b)(6). This motion cannot succeed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.), *cert. denied*, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *quoting Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, the Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff. *Id.*

### Discussion
### Contract Claims

The heart of plaintiff's claims against the PNC defendants are her claims based on breach of contract, negligence, and al-

---

1. Plaintiff has alternatively pled that Sneed contacted MetLife and that MetLife requested the change in address. Because the case is before the Court on a motion to dismiss, any conflict between these alternative scenarios does not need to be resolved and the Court will use the one most favorable to plaintiff when judging the claims related to the PNC defendants.

2. Sneed has filed a document with the Court denying plaintiff's allegations that she committed fraud or theft. Sneed admits that she changed the address, received the new checks, and wrote some amount of checks. However, she claims that she did all of this with plaintiff's knowledge and that plaintiff actually received some of the money from the checks.

leged violations of N.C. Gen.Stat. § 25–3–404 and N.C. Gen.Stat. § 25–4–401.[3] These claims are set out as fourth and seventh claims in her amended complaint. The only argument for dismissal raised by the PNC defendants, concerning the contract portions of her claims, is that she is not a "customer" of the banks under the facts pled in the complaint. The PNC defendants' theory is that plaintiff claims that MetLife set up the Total Control Account. North Carolina law defines the term "customer" in this setting as being "a person having an account with a bank or for whom a bank has agreed to collect items, including a bank that maintains an account at another bank." N.C. Gen.Stat. § 25–4–104(a)(5). Because MetLife established the account, the PNC defendants believe that only MetLife can qualify as the "customer" for the account and that any contract based on the account was between the PNC defendants and MetLife, not the PNC defendants and plaintiff. The PNC defendants also point out that, to the extent that plaintiff's contract claims are based on her contract with MetLife to provide and guarantee the life insurance benefits, the PNC defendants would not be a party to that contract.

While the PNC defendants' last assertion regarding any claims based on a contract between plaintiff and MetLife may well be correct, their arguments do not otherwise prevail. Plaintiff alleges that the checkbook for the Total Control Account was sent to her in her name and the facts of the complaint establish that plaintiff had the right to withdraw substantial amounts of money from the account. On the other hand, there is no indication in the complaint that MetLife had any control over or relationship with the funds in the account beyond paying the money in when the account was established and providing some sort of guarantee for the money. The PNC defendants have failed to give any case law or other support for its position that, under these circumstances, MetLife is the only party "having" the account and plaintiff is not. A person having a checkbook and the right to make withdrawals from an account certainly "has" the account in some sense of the word. The PNC defendants have also not discussed whether plaintiff and MetLife might both be considered customers under North Carolina law. Finally, they do not appear to have considered that, even if MetLife is the solitary "customer" associated with the Total Control Account, plaintiff might be an intended third-party beneficiary with the ability to enforce any contract formed between MetLife and the PNC defendants regarding the account. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991)(discussing the circumstances in which third-party beneficiaries can enforce contracts). For all of these reasons, the Court cannot say that it appears beyond doubt that plaintiff cannot establish her contract claim. The PNC defendants' motion to dismiss the contract claim should be denied.

### Negligence

Other significant portions of claims Four and Seven of the amended complaint allege negligence on the part of the PNC defendants. While there are a number of allegations of negligence, they can all be generally described as alleging negligence based on the PNC defendants' changing plaintiff's account information at Sneed's

---

**3.** In her original complaint, plaintiff alleged violations of other provisions of North Carolina law, including one for conversion under N.C. Gen.Stat. § 25–3–420. The PNC defendants moved to dismiss these claims and the plaintiff removed the statutory cites from her amended complaint. Therefore, the Court finds that she has dropped those claims and will not discuss them further.

request, accepting the forged checks, and removing the money for the checks from the Total Control Account.

The PNC defendants make two arguments pertaining to this claim. One argument is that plaintiff must establish that the PNC defendants owed her a duty of care and that, because she is not a customer, she cannot establish a duty. They say that banks do not owe a duty of care to non-customers.[4] This argument is based on the same logic set out above in the discussion of plaintiff's contract claims and fails for the same reasons.

The PNC defendants' second argument in favor of dismissing plaintiff's negligence claims is that her common law claims of negligence have been "displaced" by the North Carolina's enactment of the Uniform Commercial Code (UCC). They claim, therefore, that while plaintiff could theoretically raise a claim under some UCC provisions, she cannot bring a common law negligence action.

■ Again, the PNC defendants have given insufficient support for their argument. In fact, the wording of the statute works against the PNC defendants' arguments. North Carolina's version of the UCC states that "*[u]nless displaced* by the particular provisions of this chapter, the principles of law and equity . . . *shall supplement* its provisions." N.C. Gen.Stat. § 25–1–103 (emphasis added). The PNC defendants have to show a specific displacement because otherwise, the UCC supplements the common law rights. *Cassello v. Allegiant Bank,* 288 F.3d 339, 341 (8th Cir.2002), *reh'g and reh'g en banc denied* (2002). They fail to make such a showing. The PNC defendants' brief does

not even cite the "particular provisions" that they claim displace all of plaintiff's claims of negligence. They merely cite two unrelated fraudulent check cases that generally support displacement of negligence claims when such are specifically disavowed a state's UCC. *See Guardian Life Insurance Company of America v. Weisman,* 223 F.3d 229, 238 (3d Cir.2000); *Joffe v. United California Bank,* 141 Cal. App.3d 541, 558, 190 Cal.Rptr. 443 (1983). The PNC defendants have not discussed the particular UCC provisions that may conflict with plaintiff's common law claims, the purpose of the legislature in passing them, the impact of allowing plaintiff's claims on the overall structure of claims and defenses set up in the applicable UCC provisions, etc. These considerations are an important part of a displacement analysis. *Equitable Life Assurance v. Okey,* 812 F.2d 906, 909 (4th Cir.1987).

■ Not only have the PNC defendants failed to fully develop their displacement argument as to negligence surrounding their acceptance of the forged checks, they have completely failed to address other portions of plaintiff's negligence claims. This is critically important because plaintiff's claims are based not only on the mere payment of the forged checks, but also on the PNC defendants' alleged negligence in changing the address on the account at Sneed's request and sending her a checkbook. Plaintiff further alleges that the PNC defendants do not have adequate internal procedures to protect persons such as plaintiff. Therefore, in order to be entitled to dismissal, the PNC defendants would need to show that particular UCC provisions displaced all these types of claims.[5] They have not done so at this

4. Assuming the account information was changed, PNC does not explain by what right it took these actions if plaintiff were not its customer and why it did not require approval from MetLife, "its alleged only true customer." *See* n. 1.

5. It is clear from case law that, even where statutory and UCC remedies or standards overlap, the UCC does not displace all negligence claims related to fraudulent checks or negotiable instruments. *See Cassello v. Allegiant Bank,* 288 F.3d 339 (8th Cir.2002); *Mer-*

time. While the PNC defendants may well be correct in their displacement arguments and may prevail on the issue at summary judgment, their motion to dismiss plaintiff's negligence claims should be denied.

## UCC Claims

The remaining parts of plaintiff's fourth and seventh claims for relief are her statutory/UCC claims made under N.C. Gen. Stat § 25–3–404 and N.C. Gen.Stat. § 25–4–401. The PNC defendants believe that both of these claims should be dismissed.

Section 25–3–404 deals with impostors and fictitious payees, but it is not clear why plaintiff thinks it applies in this case. Plaintiff contends that she has a viable claim under subsections (b) and (d) of the statute. Subsection (d) sets out certain duties of care that come into play to those who pay or take instruments under situations where subsections (a) or (b) apply. Plaintiff relies on subsection (b) to establish her claim under Section 25–3–404.

Subsection (b) states that certain rules apply until an instrument is negotiated by special endorsement in two situations, to wit: when "(i) a person whose intent determines to whom an instrument is payable (G.S. § 25–3–110(a) or (b)) does not intend the person identified as the payee to have any interest in the instrument, or (ii) the person identified as the payee of an instrument is a fictitious person."

■ It is apparent from the plain language of subsection (b) and N.C. Gen.Stat. § 25–3–110 that N.C. Gen.Stat. § 25–3–404(b) does not apply to facts alleged by plaintiff. The first set of conditions to which subsection (b) applies is where the "person whose intent determines whether an instrument is payable" does not intend for the identified payee to have an interest in the instrument. North Carolina General Statute § 25–3–110(a) states that intent is determined according to the "intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument." Under this rule "[i]f X forges Y's signature as drawer of the check, the intent of X also controls." *Id.*, Comment 1. Here, Sneed allegedly forged plaintiff's signature on the checks, and under the rule just stated, Sneed's intent controls as to who is the proper payee. Because Sneed herself was the payee, she obviously intended that she would have an interest in the checks. Therefore, N.C. Gen.Stat. § 25–3–404(b)(i) does not apply. Likewise, N.C. Gen.Stat. § 25–3–404(b)(ii) cannot apply because it only covers fictitious payees and Sneed was a real, not fictitious, payee.

Despite this seemingly straightforward outcome under the applicable statutes, plaintiff argues that subsection (b) does apply based on the official comments discussing that subsection. She is apparently relying on a general statement in the comments that subsection (b) "also applies to forged check cases." While plaintiff is correct that these words appear in Comment 2 of the statute, she fails to point out that the commentary also states that the primary importance of subsection (b) "is with respect to corporations and other organizations." Plaintiff is not a corporation or organization. Furthermore, a reading of the entire comment and its five examples

*rill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank,* 702 F.Supp. 652 (N.D.Ill.1988). This is not to say that these cases are in any way controlling in the present case. Instead, they illustrate that it is not enough to simply say that Articles 3 and 4 of the UCC wipe out all negligence claims based on fraudulent checks. Because some types of claims are displaced and others are not, the PNC defendants must address all of the specific allegations of negligence in the amended complaint and explain which UCC provisions displace them and why.

demonstrates that subsection (b) does not apply to all forged check cases. Instead, it only applies where its other requirements are met—i.e. no intent of the maker that the listed payee have an interest or a fictitious payee is listed. Neither the comment nor its examples indicate general applicability to all forged check cases. For these reasons, plaintiff has not stated facts sufficient to support a claim under N.C. Gen.Stat. § 25–3–404 and the PNC defendants' motion to dismiss should be granted as to this claim.

A different result pertains to plaintiff's claim under N.C. Gen.Stat. § 25–4–401. This statute was not included in her original complaint, but was first mentioned as a possible basis for a claim in her response brief. The PNC defendants replied that, while she might theoretically have a claim under the statute, she had not included a claim based on the statute in her complaint and could not actually have one because she was not a customer of the PNC defendants. Of course, plaintiff has now explicitly stated a claim under the statute in her amended complaint. Furthermore, the Court has already determined that plaintiff's status as a customer of the PNC defendants cannot be determined at this time. Therefore, both of the proffered reasons for dismissing the claim fail and the motion to dismiss should be denied as to plaintiff's claim under N.C. Gen.Stat. § 25–4–401.

### Punitive Damages

The fifth and eighth claims for relief in plaintiff's amended complaint are not labeled, but appear to be requests for punitive damages.[6] In those claims, she alleges that the PNC defendants acted in bad faith by refusing to acknowledge her claim, accusing her of contributory negligence, and refusing to reach an equitable settlement of her claim. She also asserts that their refusal to pay in accord with the provisions of the Total Control Account is "aggravated conduct" that breaches the covenant of good faith and fair dealing, is willful, oppressive, and malicious conduct intended to intimidate plaintiff to keep her from making a claim to collect what defendants owe her, is an outrageous misuse of power and authority, and is in reckless and wanton disregard of plaintiff's contractual rights.

The PNC defendants argue that plaintiff's punitive damages claims should be dismissed because such damages are only available under North Carolina law when a plaintiff can show that a defendant engaged in (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C. Gen.Stat. § 1D–15. Not only this, but because the PNC defendants are corporations, plaintiff would need to show that officers, directors, or managers of the corporations participated in or condoned the bad conduct. *Id.* They cannot be awarded for mere breach of contract. *Id.* According to the PNC defendants, the conduct alleged by plaintiff cannot satisfy this standard because plaintiff alleges nothing more than a breach of contract and lack of settlement of plaintiff's claim. They maintain that any allegations of bad faith are nothing more than conclusory statements without supporting facts.

Having reviewed the complaint, the Court finds that the PNC defendants' characterization of it is largely correct. It generally consists of ordinary breach of contract or negligence allegations with only conclusory allegations of bad faith or oppressive behavior. The facts to support these allegations appear absent. Such weak allegations of punitive damages

---

**6.** The claims largely mirror her second claim for relief which does ask for punitive damages against MetLife.

would likely be dismissed at summary judgment in any event and might well be subject to dismissal even at this stage of the proceedings. However, the Court need not make a final decision on the matter because plaintiff failed to respond to the PNC defendants' request to dismiss the punitive damages claim. She does not defend the claims or argue that they should remain in the case. For this reason, the PNC defendants' motion to have them dismissed is unopposed and should be granted.

### Unfair and Deceptive Trade Practices

The final claims that are subject to the PNC defendants' motion to dismiss are plaintiff's sixth and ninth claims. These claims request treble damages based on alleged violations of N.C. Gen.Stat. § 75–1.1. According to the amended complaint, the PNC defendants violated the statute by engaging in an unfair and deceptive trade practice through their "practices and actions" which deceived "Plaintiff in thinking that the $101,818.99 that was deposited ... into the Total Control Account ... was secured and guaranteed." (Amended Complaint, ¶ 43)

The PNC defendants urge dismissal of the claim by pointing out that paragraph 24 of plaintiff's original complaint (the amended complaint is the same) states that it was MetLife who provided her with documentation stating that the money in the account was guaranteed. Paragraph 11 of the amended complaint also makes this statement. The complaint makes no similar claim as to the PNC defendants.

■ The Court finds that the PNC defendants are correct. Plaintiff's statement is nothing more than a conclusion. She has not set out facts demonstrating any deceitful "actions or practices" on the part of the PNC defendants. Further, the amended complaint affirmatively claims that it was MetLife who guaranteed the Total Control Account. Based on the facts in the complaint, MetLife is the only party against which plaintiff has alleged any facts that could be construed to show any sort of deceit regarding whether the money was guaranteed or secure in the Total Control Account.

In plaintiff's response brief, she not only relies on the language used in the sixth and ninth claims, but also makes arguments based on other allegations in the complaint, such as the PNC defendants' refusal to pay plaintiff's claim and stating that they would not pay because the loss was plaintiff's fault.[7] First, these allegations are not set out in the sixth and ninth claims themselves. Second, and unfortunately for plaintiff, these allegations, at most, really describe nothing more than a run of the mill contract dispute where each party believes that the other is responsible for a problem that has arisen.

■ Unfair and deceptive trade practices claims may not be maintained based on a breach of contract absent substantial aggravating circumstances. This is true even if the breach is intentional. *Canady v. Crestar Mortgage Corp.*, 109 F.3d 969, 975 (4th Cir.1997). Plaintiff fails to identify these circumstances. Instead, she has used conclusory and somewhat inflammatory language to describe the PNC defendants' actions. She states, for instance, that they used "willful, oppressive, and malicious means" to intimidate her and keep her from seeking restitution. However, she has not given any description of these allegedly nefarious means. Stripped of the hyperbolic adjectives, the allegations amount to a simple refusal to repay or a

---

**7.** Plaintiff also states that the PNC defendants led her to believe her account "was secured and guaranteed in the event of fraud." (Pl.'s Br. at 9) This is a wholly conclusory statement, not based on factual allegations. *See* Amended Complaint ¶ 61.

statement by the PNC defendants that the loss was plaintiff's own fault. These actions by PNC do not amount to aggravating circumstances so as to allow an unfair and deceptive trade practices claim. A practice is unfair if "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and is deceptive if "it has the capacity or tendency to deceive." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). The unfairness must occur at the time the contract is performed. *United Roasters, Inc. v. Colgate–Palmolive Co.*, 649 F.2d 985 (4th Cir.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981). The disagreement which arises between the parties after the problem surfaces over who should bear the responsibility for detecting and preventing Sneed's fraud does not normally fall into this category of behavior, no matter how insulting or frivolous plaintiff may feel PNC's denials are. Plaintiff's sixth and ninth claims for relief should be dismissed.

**IT IS THEREFORE RECOMMENDED** that the PNC defendants' motion to dismiss (docket no. 6) be denied as to plaintiff's claims for breach of contract, negligence, and a violation of N.C. Gen. Stat. § 25–4–401 and granted as to plaintiff's claims for punitive damages, unfair and deceptive trade practices, and a violation of N.C. Gen.Stat. § 25–3–404.